REINAUER REALTY CORPORATION, A NEW JERSEY COR-
PORATION, PLAINTIFF-APPELLANT, v. THE BOROUGH
OF PARAMUS, A MUNICIPAL CORPORATION, AND
THE MAYOR AND COUNCIL OF THE BOROUGH OF
PARAMUS, DEFENDANTS-RESPONDENTS.

Argued March 7, 1961—Decided April 10, 1961.

Mr. *George A. Brown* argued the cause for plaintiff-appellant (*Messrs. Morrison, Lloyd & Griggs,* attorneys; *Mr. Bruce M. Ramer,* on the brief).

Mr. *Frank J. Glock* argued the cause for defendants-respondents (*Mr. Guy W. Calissi,* attorney).

The opinion of the court was delivered by

FRANCIS, J.   Plaintiff, Reinauer Realty Corporation, applied under the zoning ordinance of the defendant Borough of Paramus for a special exception use to permit the construction of a gasoline station.   After the Mayor and Council of the borough had rejected the favorable recommendation of the Board of Adjustment, this suit in lieu of prerogative writ was instituted.   The Law Division decided that the action of the governing body was arbitrary and directed the issuance of a building permit subject to compliance by plaintiff with certain ordinance requirements.   The Appellate Division reversed and this court granted the subsequent application for certification.   33 *N. J.* 487 (1960).

Reinauer is the contract purchaser of an almost triangular shaped lot located at the intersection of Route 17 and Powers Drive in Paramus.   Route 17, a state highway, is a major traffic artery in Bergen County.   The property contains 1.19 acres, with a frontage of almost 276 feet on the highway and of almost 264 feet on Powers Drive.   A brook runs along the other side of the triangle for about 354 feet.   Thus, Route 17 is one side of the triangle, the brook is the other, and Powers Drive is the base.   The Water Policy Commission has ruled that no structure may be erected within 35 feet of the center line of the brook.   The Garden State Parkway is less than 700 feet in a general easterly direction from the intersection of the brook and the corner of the lot at Powers Drive.

The zoning ordinance has assigned the property and the surrounding area to the D or general business district. Gasoline stations are permitted in the district as a "special exception use." Such use is defined by the ordinance to be one for which the Board of Adjustment may recommend the granting of a permit to the Borough Council. For a comprehensive explanation of that type exception, see *Tullo v. Millburn Tp.*, 54 *N. J. Super.* 483, 490–491 (*App. Div.* 1959). More specifically in this respect, the ordinance provides:

"* * * The Board of Adjustment shall also have original jurisdiction and power to recommend to the Mayor and Council, after advisory report by the Planning Board, that a permit be granted for a special exception use on a particular site, in accordance with the provisions of this ordinance, without a finding of practical difficulty or undue hardship, but subject to the guiding principles, standards, conditions and safeguards contained in this section 20–C, to the extent applicable in the manner provided by law."

In this connection plaintiff calls our attention to another section of the ordinance which says that the authorized special exception uses in D district "shall be permitted subject in each case to approval by the Board of Adjustment after advisory report by the Planning Board * * *." On the basis of this language, the contention is advanced that the Board of Adjustment has the power to grant such a use after a favorable report from the Planning Board, and that the governing body cannot reject a recommendation by it favorable to the property owner. The language referred to does seem to conflict with the specific definition of a special exception use appearing in the ordinance and with the provision quoted at length above which is set out therein under the legend "Grant of Power," both of which restrict the authority of the Board of Adjustment to a recommendation to the Mayor and Council. In our judgment, the best that can be said for plaintiff's argument is that an ambiguity exists as to the extent of the delegation, which under ordinary tenets of construction should be re-

solved against the existence of the unqualified power. This view is fortified by the fact that both municipal bodies construed the ordinance as conferring recommendatory authority only. And see *Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405 (1952).

When the application for the special exception use was made, it was referred by the Board of Adjustment to the Planning Board for the preliminary advisory report commanded by the ordinance as to "the location of such use in relation to the needs and growth pattern of the Borough and, where appropriate, with reference to the adequacy of the site area and the arrangement of buildings, driveways, parking areas, off-street truck loading spaces, and other features of the site plan." Pursuant to the reference, the Planning Board reviewed the matter and determined that:

"the parking area is adequate, that the driveways are convenient and conducive to safe operation of motor vehicles, and the fuel pumps, planting and curbing conform to Borough Ordinances. The vehicle entrances and exits are clearly visible.

In addition the Planning Board has determined that the proposed location will serve the needs and growth pattern of the Borough."

Thereupon a resolution was adopted unanimously recommending approval of Reinauer's application, subject to some incidental conditions respecting the posting of a bond, payment of certain fees and compliance with all applicable ordinances.

The ordinance lays out in considerable detail the nature of the hearing and the findings to be made by the Board of Adjustment as a condition to recommendation of a special exception use. A "special finding [must be made], supported by evidence produced at a public hearing in the manner provided by law, that such use will not be detrimental to the character of the neighborhood." Further, a determination must be made (1) that "there is appropriate provision for access facilities adequate for the estimated traffic from public streets and sidewalks so as to assure public safety and to avoid traffic congestion," and that the entrances

and exits shall be clearly visible from the street and not within 75 feet of a street intersection; (2) that there are fully adequate parking areas, the layout of which areas and interior driveways, is convenient and conducive to safe operation; (3) that suitable provision is made for certain planting or fencing along side and rear lot lines, if the lines are adjacent to residential uses or districts; (4) that the lighting facilities provided meet the conditions specifically prescribed in the ordinance; (5) that no part of any entrance or exit is connected with a public street at a point within 300 feet of certain types of buildings or places of public assembly; (6) that no part of any entrance or exit is less than 100 feet from any boundary line of a residential district; (7) that no part of any building or filling pump, gasoline storage tank, car lift or other service appliance will be within 100 feet of any residential district boundary line; (8) that no gasoline or oil pump, oiling or greasing mechanism or service appliance will be located within 20 feet of any street line; (9) that the storage and use of flammable gases or liquefied petroleum gases will be installed according to the specified regulations; and (10) that the location of the special exception use is appropriate to the character of the particular part of the D district "and that it will be advantageous to the interests and convenience of the neighborhood." All of these conditions are necessarily subject to the paramount requirements imposed by *N. J. S. A.* 40:55–39; *i. e.,* that the relief sought is not permissible unless it can be granted "without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance."

The matter was set down for hearing before the Board of Adjustment and all property owners within 200 feet of the Reinauer property were notified. None of these owners appeared or objected to the application. At the hearing plaintiff was represented by a real estate broker. The only record submitted to us as to what took place there appears in the very brief and uninformative minutes and resolution

of the board. This is most unfortunate, particularly since the resolution recites that testimony was heard (without specifying what it was) and arguments considered. The minutes say that:

"the property is very irregular in shape and is a corner plot having a frontage on Route 17 and Powers Drive. A drainage brook runs along the rear of the property and the Water Policy Commission has stipulated that no structure may be erected within 35 ft. of the center line of the brook. The property is best suited for a gasoline station."

They note also that a study was made by the Planning Board resulting in a recommendation of approval of the special exception use.

The minutes then contain a statement that the board being of the opinion

"* * * that the property was well suited for a Gasoline Service Station and that such a Service Station would not be detrimental to the general character of the neighborhood nor to the public good, the following Resolution * * *"

was introduced and adopted unanimously. The resolution recites that the Planning Board had inspected the premises and given its approval to the gasoline station use, and continues:

"Whereas, the Board of Adjustment of the Borough of Paramus, after due deliberation, does hereby find and determine that:

1. The property under consideration is particularly suitable for a gasoline service station in view of its irregular shape, its considerable frontage on Route 17, and its shallow depth in general.

2. The erection of a gasoline service station on said premises would not be detrimental to the public good nor to the general character of the neighborhood."

It concludes by recommending that the Mayor and Council approve the grant of a special exception use to permit the erection of the gasoline service station in accordance with plans and specifications filed "in the Board of Adjustment appeal."

The appendix submitted on this appeal leaves us entirely in the dark as to the nature of the record, if any, that was submitted to the Mayor and Council with the recommendatory resolution. Following the resolution the next matter appearing in the appendix is an excerpt from the minutes of the Council meeting of January 28, 1959, which simply notes:

"Reinauer Realty Company Docket No. 768, Mr. O'Toole asked that this application be denied and was so moved, seconded and carried."

It is conceded that no notice of this meeting was given to Reinauer; nor was any opportunity afforded to it to present the matter orally and submit the reasons why the action of the Board of Adjustment should be approved. A week after the meeting, the Building Inspector advised plaintiff of the denial of the special exception. Neither the minutes nor the letter specify any grounds for the adverse action. Subsequently the discovery was made that on January 27, 1959 O'Toole, one of the Borough Councilmen, and chairman of the Finance and Administration Committee, had submitted a written report on the matter to the Mayor and Council. It says:

"I hereby recommend that the application of Reinauer Realty Corporation for erection of a Service Station at the intersection of Powers Drive and Route 17, Paramus, N. J., be denied.

This recommendation is the direct result of a field inspection which disclosed that a Service Station at this location is neither necessary to the needs and growth pattern of the Borough nor advantageous to the interests and convenience of the neighborhood, in view of the proximity of a nearby Service· Station.

In addition, we are convinced that the property could be utilized for a more appropriate permitted use. There is sufficient parking area for a reasonably large building and required parking space."

Thereafter, plaintiff brought this suit seeking a reversal of the governing body's denial and a judgment directing approval of the special exception use. At the hearing in the Law Division certain pertinent assessment and zoning

maps, the zoning ordinance, the minutes and resolutions of the various boards were received in evidence by consent. Defendant conceded that an application for a building permit in proper form had been filed with the Building Inspector. And the trial court quite properly admitted the O'Toole report.

The borough pointed out that no record was made before the Board of Adjustment. The testimony, whatever it may have been, was not taken stenographically, so no verbatim transcript was feasible. No digest of it or narrative form summary was included either in the minutes or in the recommendatory resolution or elsewhere. In the face of this inadequacy as well as the asserted failure of the board to make the specific findings of fact required to justify a recommendation for grant of a special exception use, the borough contended that the plaintiff had failed to supply the court with any basis on which the decision of the Mayor and Council could be overruled.

The trial court acknowledged the inadequacy of the record presented to him, apparently in the light of *Tomko v. Vissers*, 21 *N. J.* 226, 239 (1956) and *Dolan v. DeCapua*, 16 *N. J.* 599, 612 (1954). He expressed regret that the rule required a supporting record to be made before boards composed of laymen and that it could not be established through testimony before him. In any event, he said finally:

"I am going to decide in favor of the plaintiff. I am reasonably certain that the plaintiff is entitled to this permit. I know the situation along Route 17 from my own personal observation. I do not have in mind this particular piece of property. I do not know just where it might be, but it is near the crossing of the Garden State Highway.

Maybe you are right technically, and I think you have a good argument from some of the decisions. I hope you will appeal it, and the Court, I hope, will correct some things which in my judgment it has done, and I want this record to show how I feel about it."

We pause at this point to observe that the requirement for making an adequate record before a board of adjust-

ment and for specific factual findings by it based upon that record is clear and has been announced many times both by this court and the Appellate Division. The administration of justice is not served by deliberate failure to follow established procedural rules. Procedural regularity is one of the essentials of the judicial process. Trial judges are privileged to disagree with the pronouncements of appellate courts; the privilege does not extend to non-compliance.

The Appellate Division reversed the order of the trial court directing the municipality to grant a permit for the gasoline station. The decision was predicated upon the O'Toole report which was deemed to provide adequate evidence and factual findings to justify rejection of the Board of Adjustment recommendation. We cannot agree with that result. The determination of the Mayor and Council should be reached on the record submitted by the Board of Adjustment. As has been said, the governing body may draw its own ultimate conclusions from the facts adduced before the board. *Tomko v. Vissers, supra,* 21 *N. J.,* at *p.* 236; *Monmouth Lumber Co. v. Ocean Township,* 9 *N. J.* 64, 75 (1952). But it cannot reach out and obtain some new and undisclosed evidence, which was not before the Board of Adjustment and which the property owner did not have an opportunity to meet, and utilize it as the basis for denying the recommended relief. Such a course of conduct is so fundamentally unfair as to call for judicial condemnation. *Stolz v. Ellenstein,* 7 *N. J.* 291 (1951); *Giordano v. City Commission of the City of Newark,* 2 *N. J.* 585, 589 (1949).

At this juncture it seems appropriate to refer to the matter of procedure in a situation like the present. As we have indicated, decision of the governing body should be reached on the Board of Adjustment record. New evidence cannot be introduced by either or any party except by consent. Certainly secret reports based upon undisclosed facts and opinions, which are adverse to the conclusion of the Board of Adjustment, cannot enter into the decision-making process. In such cases the governing body should refer the matter

back to the board where the new witness or proof can be examined and evaluated, and the property owner can be given an opportunity to meet the additional facts.

Under the circumstances, the O'Toole report could not supply the Mayor and Council with the reason for over-ruling the recommended relief for the plaintiff. By the same token, it was not available to the Appellate Division as a ground for reversal of the trial court. Our disagreement with the result in the Appellate Division, however, cannot bring about reinstatement of the trial court's judgment. For at that level the court in effect made his own record by employing his asserted personal knowledge of the general conditions in the area of plaintiff's property. Use of such extrinsic data not only falls into the same category as the O'Toole report, but also results substantially in the substitution of the judgment of the court for that of the local authorities. Accordingly, the matter must be remanded to the Board of Adjustment where the facts on which the O'Toole report is based can be submitted for consideration and for contest or explanation by plaintiff.

The remand seems to necessitate reiteration of the need for the making of an adequate record before the board and for the specification of findings by the board which will meet the various criteria laid down in the zoning ordinance as conditions precedent to the recommendation of a special exception use. Obviously in the ordinary case such a record must be made before the local board and not by the introduction of testimony in a court proceeding. This is necessary because the policy decision, as well as the decision as to whether the facts and circumstances of a particular case warrant the relief requested, are primarily committed to the municipal authorities. Their function is primary; that of the judiciary is secondary. Their jurisdiction is original; that of the court is to review within sharply defined limits.

It must be kept in mind that zoning and Boards of Adjustment are presently integral aspects of our community life. Decisions assigned to such boards by the Legislature

and by local ordinances must be made with a formality of procedure that will satisfy the needs of the various interests involved. The boards must realize that their action on special use exceptions, variances, and the like, in any case may ultimately reach a court for review. The judicial decision can be based only on the evidence, testimony, exhibits and the factual findings which led to the result under attack. So if a proper record is not put together and presented by the board to the governing body and later handed to the court, the judiciary cannot fulfill its role in the scheme of government. In an effort to coordinate and integrate the efforts of all agencies concerned, a further suggestion is ventured. When applications of the type involved here are presented to a local board, its members should remind themselves that a stranger to the proceedings, completely uninformed of the local conditions and of the facts of the particular problem, may be called upon to review the ultimate decision. And they should ask themselves: how can we put the problem presented to us, the facts on which we are asked to act, the decision reached by us, and the reasons (the specific factual findings) which led us to the decision, into such a documentary framework that the stranger may read and understand? Such an approach would produce the kind of understanding that is needed at all levels of treatment of these zoning problems.

The attention of the Boards of Adjustment is called to the developing practice of taking the testimony stenographically so that a complete record will be available when necessary. If for some sound reason this practice cannot be followed, the evidence introduced before the board can be summarized or perhaps set forth in detail in narrative form in the minutes as suggested in *Tomko v. Vissers, supra,* 21 *N. J.,* at *p.* 239.

Examination of the minutes and resolution of the Board of Adjustment in the present case in the light of the above comments shows that they do not measure up to the needs of the case. The standards prescribed by the ordinance as

prerequisite to a recommendation for grant of a special exception use are set forth earlier in this opinion. More specifically, they appear in sections 17C and D and 20C 10–40 of the ordinance. In ordinary situations enforcement of compliance with some of these requirements might be left in the hands of the building inspector. But special exception uses, particularly gasoline service stations, involve special problems (*Schmidt v. Board of Adjustment, Newark, supra,* 9 *N. J.,* at *p.* 422) and the Board of Adjustment ought to find the full compliance called for before issuing a favorable recommendation. Here the resolution of the board in effect incorporated the favorable resolution of the Planning Board. The function of the latter body under the ordinance is to furnish an advisory report of a fairly general character to the Board of Adjustment. Its action cannot be considered as satisfying the fact-finding duty imposed on the Board of Adjustment. Each agency must discharge its own assigned tasks as laid down by the governing body. Consequently, we assume that on the remand a full and adequate record will be constructed.

An additional observation is required with respect to the action of the governing body in these cases when a recommendation for grant of a special exception use is received. In this instance the Mayor and Council took the matter under advisement and at a regular public meeting about six weeks later, of which no notice was given to plaintiff, adopted the resolution rejecting the recommendation of the Board of Adjustment. Failure to give such notice seems to be a fairly common practice but one which, in our judgment, is fundamentally unfair. Although we agree that the property owner is not entitled to a trial type hearing at this phase of the proceedings, the application of ordinary concepts of representative government requires notice to him that his application is to be taken up at a public meeting on a certain date at which time he will be given an opportunity to be heard. Moreover, in instances where the governing body after hearing argument decides to overrule the

recommendation of the Board of Adjustment, the specific reasons for so doing ought to be expressed and made part of the minutes of the meeting, or set forth in the resolution of denial.

We recognize that no specific obligation is set out in the statute, *N. J. S. A.* 40:55–39, or in the ordinance for the enunciation of any factual findings or reasons by the governing body. But as a matter of sound and constructive procedure, in fairness to the applicant and in the interest of providing helpful aid for a court which may be called upon to review the determination, a statement of reasons should be included in the record. It must be remembered that matters concerning substantial property interests are involved and that the citizen affected ought to be told by the legislative branch of the local government why the favorable report of the subordinate agency is being reversed. Failure to do so in cases where a formidable record in support of the application has been built before the Board of Adjustment may leave a court in such doubt as to the propriety of the final municipal action that a remand for a statement of reasons may be considered essential to the proper adjudication of the problem. *Cf. Wharton Sand & Stone Co. v. Montville Tp.,* 39 *N. J. Super.* 278, 282–83 (*App. Div.* 1956).

For the reasons stated, the judgments of the Appellate Division and of the Law Division are reversed and the cause is remanded to the Board of Adjustment to be proceeded with in accordance with this opinion.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.