834 A.2d 1095 (2003)
364 N.J. Super. 224
Joseph TOMAINO, Plaintiff-Respondent,
v.
Sheldon BURMAN and the Male Sexual Dysfunction Institute, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 2003.
Decided November 20, 2003.
*1097 Walter F. Kawalec, III, Cherry Hill, argued the cause for appellants (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Joseph A. Manning, of counsel, Roseland; Mr. Kawalec, on the brief).
John R. Connelly, Jr., Red Bank, argued the cause for respondent (Drazin & Warshaw, attorneys; Mr. Connelly, of counsel, and on the brief).
Before Judges NEWMAN,[1] PARRILLO and HOENS.
*1096 The opinion of the court was delivered by PARRILLO, J.A.D.
Defendants Sheldon Burman, M.D. and The Male Sexual Dysfunction Institute appeal from an order of the Law Division, entered after our remand, remitting the *1098 amount of the jury's $3 million damage award, which we previously found to be excessive, by one cent to $2,999,999.99. We reverse.
Some background is in order. In the underlying medical malpractice lawsuit, the jury awarded plaintiff Joseph Tomaino $3 million in damages, which verdict was molded to reflect a finding by the jury allocating twenty percent fault to plaintiff. Consequently, judgment was entered in the amount of $2.4 million, plus $545,128.73 in pre-judgment interest.
On appeal, we affirmed the liability verdict, reversed the damage award, and remanded for a new trial on damages only. As to the damage award, we said:
In this case, the worth or plausibility of the evidence necessary to evaluate the damage verdict is apparent from the face of the record. Thus, we are entitled to make an independent review of the record to resolve the excessiveness claim. In doing so, we are clearly convinced that the $3 million damage award is so disproportionate as to shock the court's conscience and to clearly convince us that, to sustain the verdict, would constitute a miscarriage of justice.
[Tomaino v. Burman, No. A-5963-98T3 (App.Div. January 16, 2001) (slip op. at 14).]
In our remand, we expressly encouraged the trial court to consider a motion for remittitur under Rule 4:49-1 as an alternative to a new trial on damages. Id. at 16.
In its order granting plaintiff's petition for certification, the Supreme Court summarily remanded the matter to us for reconsideration in light of its recent decision in Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 779 A.2d 1078 (2001). Tomaino v. Burman, 169 N.J. 603, 782 A.2d 421 (2001). On remand, we said that "[w]e do not read Fertile as suggesting we revisit our holding that the $3,000,000 damage verdict is not sustainable on the facts," and instead assumed that "the remand order directs that we consider the remittitur issue." Tomaino v. Burman, No. A-5963-98T3 (App.Div. December 17, 2001) (slip op. at 2). We did, and declined defendants' invitation to exercise original jurisdiction by entering a remittitur order "lop[ping]-off" the excessive verdict amount, Fertile, supra, 169 N.J. at 500, 779 A.2d at 1089, deciding to leave that "complicated function," ibid., to the trial court which has a "feel of the case," heard the witnesses, and is in the best position to assess the evidence and determine the highest figure that could be supported by the evidence. Ibid. Accordingly, in a brief per curiam opinion of December 17, 2001, we reaffirmed our opinion and order of January 16, 2001 affirming in part and reversing in part, and remanding for the trial court to consider remittitur or, if necessary, a new trial on damages only. Tomaino v. Burman, No. A-5963-98T3 (App. Div. December 17, 2001) (slip op. at 4).
Subsequently, on May 15, 2002, plaintiff moved in the Law Division for remittitur in an appropriate amount and defendants cross-moved for remittitur in the amount already paid to plaintiff[2], or in the alternative, a new trial on damages. At argument on these motions, the trial judge noted his disagreement with our decision that the jury award was excessive and stated that "[the Appellate Division] know[s] how I feel about this case. I've already told them. I didn't think $3 million was *1099 enough." Consistent with that view, on June 7, 2002, the trial judge entered an order remitting the $3 million damage amount by one cent to $2,999,999.99.
Inevitably this, defendants' second, appeal follows. Defendants argue that the trial judge's one-cent remittitur order ignored both our finding that the $3 million damage award was excessive and our directive that on remand the amount be meaningfully reduced or a new trial on damages be held. Defendants urge us to exercise original jurisdiction and determine that the $1,262,834.31 sum already paid plaintiff in partial satisfaction of judgment reflects a proper remittitur amount or, alternatively, order a new trial on damages before another judge.
Although we clearly explained our directive that the trial court consider remittitur in our December 7, 2001 remand order, we feel constrained to explicate further in light of the action taken by the judge below.
Remittitur "describes the power of a court upon a motion for a new trial due to excessive damages rendered by a jury to require the plaintiff to consent to a decrease in the award to a specified amount as a condition for denial of the motion." Fertile, supra, 169 N.J. at 491, 779 A.2d at 1083. In other words, remittitur denies a defendant a new trial if a plaintiff consents to a specified reduction in the jury award. Henker v. Preybylowski, 216 N.J.Super. 513, 516, 524 A.2d 455, 457 (App.Div.1987). Remittitur is designed to bring excessive damages awarded by a jury to the level that the court knows is within the limits of a proper verdict and thereby avoid the necessity of a new trial. Fertile, supra, 169 N.J. at 491, 779 A.2d at 1083.
A remittitur is used not only to correct a miscarriage of justice but also to avoid the expense and delay of a new trial. Baxter v. Fairmont Food, 74 N.J. 588, 597-98, 379 A.2d 225, 229-30 (1997). Remittitur has a long history in New Jersey. Id. at 595, 379 A.2d at 228 ("[w]e have no misgivings about the remittitur practice, long in effect in [New Jersey.]"); Ekalo v. Constructive Serv. Corp. of Am., 46 N.J. 82, 93, 215 A.2d 1, 7 (1965) ("[T]here is of course no question as to the power of New Jersey's trial and appellate courts to exercise [the power of remittitur.]"); Fisch v. Manger, 24 N.J. 66, 76, 130 A.2d 815, 820 (1957) ("The remittitur practice has been recognized in New Jersey since early days."). Indeed, the practice of remittitur is encouraged at both the trial and appellate court level to avoid unnecessary expense and the delays of a new trial. Caldwell v. Haynes, 136 N.J. 422, 443, 643 A.2d 564, 574-75 (1994); McRae v. St. Michael's Med. Ctr., 349 N.J.Super. 583, 597, 794 A.2d 219, 227 (App.Div.2002). Because use of remittitur avoids the unnecessary expense and delay of a new trial, "when confronted with an excessive verdict New Jersey courts should, if possible, resort to an order of remittitur." Caldwell, supra, 136 N.J. at 422, 643 A.2d 564; Baxter, supra, 74 N.J. at 595, 379 A.2d 225; Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330-31, 261 A.2d 657, 661 (1970).
In Fertile, the Court articulated the proper approach in setting the remittitur amount:
Obviously, assessing the amount of a remittitur is a slightly more complicated function than merely determining entitlement to a new damages trial. It not only involves the conclusion that the damage award cannot stand because it constitutes a manifest denial of justice but also a determination that the remitted amount is what a reasonable jury, *1100 properly instructed, would have awarded.
....
Because the process of remittitur is essentially to "lop-off" excess verdict amounts, Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603, 611, and not to substitute the court's weighing and balancing for that of the jury, remitting the award to the highest figure that could be supported by the evidence is the most analytically solid approach. Indeed, ... such an approach "tampers least with the intentions of the jurors, who by implication wanted to fully compensate the plaintiffs...."
[169 N.J. at 500, 779 A.2d at 1089 (internal citations omitted).]
In Fertile, the Court upheld a trial court's remittitur order reducing the plaintiff-infant's award from $15 million to $5 million and the plaintiff-mother's award from $3 million to $250,000. Id. at 501, 779 A.2d at 1089-90. The Court noted that by reducing the verdict, "[the trial court] properly relied on the evidence it saw and heard ... and based the decision on its own common knowledge, as well as its experience with other injury verdicts...." Id. at 501, 779 A.2d at 1089.
Here, in its summary remand of this case, the Supreme Court neither disturbed our original determination that the $3 million damage award was excessive nor undermined the rationale for that decision. Thus, there is no basis for plaintiff's suggestion that our decision is no longer controlling. Cf. Haber v. Haber, 253 N.J.Super. 413, 417, 601 A.2d 1199, 1201 (App. Div.1992). Rather, the Supreme Court simply directed that we consider the remittitur issue in light of its strongly-expressed preference for this remedy in Fertile. Consequently, in our December 17, 2001 decision we reaffirmed our earlier determination that the $3 million damage award "is not sustainable on the facts" and remanded to the trial court to consider remittitur or, if necessary, a new trial on damages only.
Here, faced on remand with a damage award that we deemed excessive, the trial judge could only order a new damages trial, whether or not conditioned on remittitur. R. 4:49-1(a). See also Fertile, supra, 169 N.J. at 499, 779 A.2d at 1088-89. This, however, he did not do. Instead of engaging in Fertile's "complicated analysis" as we directed on remand, the trial judge paid lip service to our order in his one-cent remittitur, and remained steadfastly faithful to his original view of the jury verdict. In so doing, the trial judge not only failed to adhere to the Fertile approach, but also violated longstanding principles of our jurisprudence governing the relationship between trial and appellate courts. Our earlier opinion in this matter not only settled the trial judge's obligation on the remand, but directs the outcome here.
It is beyond dispute that a trial judge has the responsibility to comply with pronouncements of an appellate court. Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415, 169 A.2d 814, 819 (1961); Jersey City Redev. Agency v. The Mack Properties Co. # 3, 280 N.J.Super. 553, 562, 656 A.2d 35, 39 (App.Div.1995); Daniel v. State of N.J., Dep't of Transp., 239 N.J.Super. 563, 582, 571 A.2d 1329, 1338 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990). "It is the peremptory duty of the trial court, on remand, to obey the mandate of the appellate tribunal precisely as it is written." Jersey City Redev. Agency, supra, 280 N.J.Super. at 562, 656 A.2d at 39. See also Flanigan v. McFeely, 20 N.J. 414, 420, 120 A.2d 102, 105 (1956). Although trial judges are privileged *1101 to disagree with our decisions, "the privilege does not extend to non-compliance." Reinauer Realty Corp., supra, 34 N.J. at 415, 169 A.2d at 819. See also Miah v. Ahmed, 359 N.J.Super. 151, 155, 819 A.2d 440, 442-43 (App.Div.2003); Petrusky v. Maxfli Dunlop Sports, 342 N.J.Super. 77, 81, 775 A.2d 723, 725-26 (App.Div.), certif. denied, 170 N.J. 388, 788 A.2d 772 (2001); Weir v. Market Transition Facility, 318 N.J.Super. 436, 448, 723 A.2d 1231, 1237 (App.Div.), certif. denied, 160 N.J. 477, 734 A.2d 792 (1999). In other words, trial judges are bound to follow the rulings and orders of the Appellate Division; they are not free to disregard them. Kosmin v. New Jersey State Parole Bd., 363 N.J.Super. 28, 40, 830 A.2d 914, 921-22 (App.Div.2003); Hiering v. Township of Jackson, 248 N.J.Super. 37, 43 n. 2, 589 A.2d 1373, 1376 n. 2 (Law Div.1990) (citing Reinauer Realty Corp., supra, 34 N.J. at 415, 169 A.2d at 819), aff'd, 248 N.J.Super. 9, 589 A.2d 1357 (App.Div.1991).
Even where manifestly erroneous, the decision on appeal must be enforced as written, and relief from its direction "can be had only in the appellate court whose judgment it is." In re Plainfield-Union Water Co., 14 N.J. 296, 303, 102 A.2d 1, 4 (1954). See also Isserman v. Isserman, 2 N.J. 1, 6, 65 A.2d 508, 511 (1949); Kupper v. Barger, 38 N.J.Super. 265, 267, 118 A.2d 694, 695-96 (App.Div. 1955); Hellstern v. Smelowitz, 17 N.J.Super. 366, 370, 86 A.2d 265, 266-67 (App. Div.1952). Indeed, the very essence of the appellate function is to direct conforming judicial action. In re Plainfield-Union Water Co., supra, 14 N.J. at 303, 102 A.2d at 4-5. See also In re Sanford Fork and Tool Co., 160 U.S. 247, 256, 16 S.Ct. 291, 293, 40 L.Ed. 414, 416 (1895). As such, the trial court has no discretion when a mandate issues from an appellate court. It simply must comply. In re Plainfield-Union Water Co., supra, 14 N.J. at 303, 102 A.2d at 4-5. This governing principle is embodied in our court rules, which provide that "[t]he opinion of the appellate court ... shall state whether the judgment, order, or determination below is affirmed, reversed or modified, or it may provide for final judgment dispositive of the action." R. 2:11-3(b). See also R. 2:9-1. Clearly the appellate court's instructions to the trial court on remand are binding on that court, Jersey City Redev. Agency, supra, 280 N.J.Super. at 562-63, 656 A.2d at 39-40, and the trial court "has no choice but to follow those instructions irrespective of its private view as to their soundness." Pressler, Current N.J. Court Rules, comment on R. 2:11-3 (2004). Adherence to this bedrock doctrine is vital to the proper administration and enforcement of the laws, promotes certainty and stability, and contributes to the actual and perceived integrity of the judicial system.
This principle is so basic to the legitimacy of the judicial system that it is difficult to fathom the trial judge's departure from our clear command to order a new trial whether or not conditioned on a remittitur. By ordering instead a one-cent remittitur, the trial judge held firm in his contrary belief that the "$3 million was [not] enough." Regrettably, as a result, eleven years after the incident occurred, nine years after the filing of plaintiff's complaint, and almost three years after our original determination that the damages verdict was excessive, we still have no meaningful analysis by a trial judge who had the opportunity to observe witnesses, hear testimony, and otherwise get the "feel of the case," Fertile, supra, 169 N.J. at 500, 779 A.2d at 1089, as to the proper amount of remittitur. Unfortunately, the administration of justice has been disserved, and the parties unfairly and improperly *1102 burdened, by the failure of the trial judge to follow our instructions.
Nevertheless, while we acknowledge the delay resulting in the trial judge's non-compliance with our remand opinion, we decline, as we did before, defendants' invitation to exercise original jurisdiction in disposing of the matter. R. 2:10-5. Our original factfinding authority must be exercised only "with great frugality and in none but a clear case free of doubt." In re Boardwalk Regency Corp. Casino License Application, 180 N.J.Super. 324, 334, 434 A.2d 1111, 1116 (App.Div.1981), modified on other grounds, 90 N.J. 361, 447 A.2d 1335 (1982). See also Jersey City Redev. Agency, supra, 280 N.J.Super. at 563, 656 A.2d at 39-40; In Re J.D.H., 336 N.J.Super. 614, 628, 765 A.2d 1084, 1092-93 (App.Div.2001), rev'd on other grounds, 171 N.J. 475, 795 A.2d 851 (2002). This is not such a case. In the first place, a remittitur determination would not finally dispose of the matter since plaintiff remains free to withhold consent to the specified reduction in the jury's award, thus forcing a new damages trial. Henker, supra, 216 N.J.Super. at 516, 524 A.2d at 457. More significantly, the proper amount of remittitur in this case is admittedly not "free of doubt." Rather, that "complicated function," Fertile, supra, 169 N.J. at 500, 779 A.2d at 1089, should ordinarily be left to the trial court which has a "feel of the case" and is in the best position to assess the evidence to determine the highest figure that could be supported by the evidence. Ibid.
We are therefore constrained to again remand the matter but, under the circumstances, to a different judge, given the original trial judge's demonstrated unwillingness to comply with our instructions. We recognize the reality that the trial court now will not be able to meaningfully consider the remittitur issue as we originally ordered, lacking the requisite "feel of the case" of the original trial judge. As such, our remand must be limited to ordering only a new damages trial, not conditioned on remittitur. Accordingly, we reverse the trial court's remittitur order of June 7, 2002, effectively denying defendants' alternative motion for a new trial, and remand for a new damages trial only.
Reversed and remanded for a new trial on damages.
NOTES
[1] Judge Newman did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] On July 1, 1999, a partial warrant of satisfaction was filed in response to defendants' payment to plaintiff of $1,262,834.31. The partial payment amount represented the limits of defendants' insurance coverage, plus pre-judgment and post-judgment interest through the date of payment.