**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2162-24

CENTRAL JERSEY COLLEGE
PREP CHARTER SCHOOL, a
New Jersey non-profit corporation,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

NEW JERSEY CHINESE
COMMUNITY CENTER,

      Defendant-Appellant/
      Cross-Respondent.

_____

Submitted March 3, 2026 – Decided April 9, 2026

Before Judges Gilson, Perez Friscia, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1305-16.

Cynthia M. Hwang, Esq., LLC, attorney for appellant/cross-respondent (Cynthia M. Hwang, on the briefs).

Johnston Law Firm LLC, attorneys for respondent/cross-appellant (Thomas O. Johnston, of

counsel and on the briefs; Jaryda A. Gonzalez, on the briefs).

PER CURIAM

This matter returns to us following a remand for an evidentiary hearing to determine the damages owed to defendant New Jersey Chinese Community Center (defendant or Community Center) because of plaintiff Central Jersey College Prep Charter School's (plaintiff or Charter School) breach of leases.

The Community Center appeals from a January 29, 2025 order awarding it $100,022.98 in damages, contending the award was insufficient and not supported by findings of facts. The Charter School cross-appeals from the same order, asserting the trial court should have awarded it $122,497. Because the trial court did not fully conform with our remand instructions and did not adequately explain several material factual findings supporting its award, we vacate the January 29, 2025 order and remand for further proceedings. We also reject the arguments raised in the Charter School's cross-appeal.

On the second remand, the trial court is to follow the instructions we set forth in this opinion. Additionally, when it enters its judgment following the second remand, the court is to issue a written decision that complies with Rule 1:7-4.

A-2162-24

I.

This matter arises out of contentious disputes between the Community Center and the Charter School related to space the Charter School rented in a building owned by the Community Center. The matter has a protracted procedural history, which has been complicated by the shifting strategies employed by both parties. We have previously detailed the landlord-tenant relationship between the Community Center and the Charter School in our opinion on the first appeal. See Cent. Jersey Coll. Prep Charter Sch. v. N.J. Chinese Cmty. Ctr., Inc. (Central Jersey I), No. A-4632-19 (App. Div. Dec. 28, 2022). In this opinion, we will summarize the facts and procedural history relevant to the remaining damage issues.

The Community Center owned a building located in Franklin Township that had approximately 90,000 square feet (the Building). It operated its center in parts of the Building, including running a daycare and private school.

Beginning in 2007, the Charter School leased space in the Community Center's Building. Initially, the Charter School enrolled students in grades six through twelve. Later, it expanded its enrollment to include students in kindergarten through fifth grade. Consequently, the Charter School entered two leases with the Community Center: one lease was for space for grades six

A-2162-24

through twelve, the "upper school"; the other lease was for space for grades kindergarten through fifth grade, the "lower school."

The first lease was executed in 2008 and amended and extended to July 2020 (the First Lease). More specifically, the final amendment to the First Lease covered the period from July 14, 2015 through July 14, 2020.

Under the First Lease, the Charter School rented approximately 45,000 square feet of the upper floor of the Community Center's Building. In the final amendment to the First Lease, the Charter School agreed to pay rent of $2,250,000 in monthly installments of $37,084. The Charter School also agreed to pay a $60,000 security deposit in three installments, but it paid only half of the deposit. The First Lease permitted the Charter School to construct classrooms and a gymnasium in the leased premises at its own expense. The Charter School subsequently converted a storage space that was roughly the size of two to three classrooms into a gymnasium. Additionally, a 2013 amendment to the First Lease permitted the Charter School to construct an "air bubble gym" in the rear parking area of the Building at its own expense.

The second lease was signed in April 2015, and covered a sixty-month period from July 14, 2015 to July 14, 2020 (the Second Lease). Under the Second Lease, the Charter School rented parts of the lower floor of the

4

Community Center's Building and used that space for grades kindergarten through fifth grade. The Charter School's square footage access to the lower school space was intended to increase over time. Accordingly, the monthly rent paid by the Charter School under the Second Lease incrementally increased. In that regard, the Second Lease called for the Charter School to pay $1,356,468 in rent over sixty months in monthly installments as follows:

7/14/2015 to 7/14/2016 - $12,500 per month

7/14/2016 to 7/14/2017 - $16,250 per month

7/14/2017 to 7/14/2018 - $21,125 per month

7/14/2018 to 7/14/2019 - $27,463 per month

7/14/2019 to 7/14/2020 - $35,701 per month

The Charter School also paid a $40,000 security deposit. Both leases contained covenants of quiet enjoyment.

In 2015, disputes arose between the parties concerning the construction of the air bubble gym. At around that same time, the Charter School discussed purchasing the Community Center's Building. The negotiations concerning the purchase ultimately failed. As a result, the parties' relationships deteriorated, leading to disputes over the scope of the Charter School's access to the leased spaces, including the existing gymnasium.

5

As the disputes escalated, the Charter School began negotiating a new lease in a different building owned by a different landlord. In July 2016, the Charter School executed a five-year lease to rent 90,000 square feet in a building located on Mettlers Road (the Mettlers Lease). The Mettlers Lease term began in September 2017. The Charter School did not inform the Community Center of this new lease.

In September 2017, the Charter School vacated the Community Center Building and moved to the Mettlers Road building. The Charter School's last payment of rents under both leases was made in August 2017.

These disputes resulted in a series of legal actions. In October 2015, the Community Center filed a summary disposition action seeking to bar the Charter School from using the existing gymnasium. That action was ultimately dismissed in favor of the Charter School.

The action that gave rise to this appeal was filed in October 2016. The Charter School filed a complaint for a declaratory judgment and related relief, alleging that the Community Center had engaged in retaliatory conduct in violation of the covenants of quiet enjoyment. The Charter School later amended its complaint to assert additional claims, including claims of

constructive eviction, breach of contract, return of security deposits, conversion, tortious interference, and abuse of process.

The Community Center filed an answer and counterclaims, asserting claims of breach of contract, fraud, constructive fraud, negligent misrepresentation, civil conspiracy, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and abuse of process. Through its counterclaims the Community Center sought to terminate the First and Second Leases and obtain an award of damages, including unpaid rents. The Community Center also filed two additional summary disposition actions, which were later consolidated with the Charter School's declaratory judgment action.

Between October 2019 and January 2020, a fourteen-day bench trial was conducted on all claims asserted in the declaratory judgment action. The trial court heard testimony from numerous witnesses, including the former and current heads of the Charter School, the director of the Community Center, and expert witnesses. A central issue was whether the Community Center had interfered with the Charter School's construction of the bubble gym. Both the former and current heads of the Charter School testified that the Charter School never had to delay, suspend, or cease its operations, and that the existing indoor

gymnasium was continuously available to the Charter School during the time that it occupied the premises at the Community Center's Building.

On April 29, 2020, the trial court entered a final judgment awarding the Community Center $921,695 (the April 2020 judgment). In a fifty-three-page written opinion, the trial court rejected most of the Charter School's claims. First, the trial court found that the Community Center had not constructively evicted the Charter School. Second, the court found that the Community Center had partially breached the First Lease by interfering with the bubble gym project but also found that the Charter School was only entitled to an offset of $52,477 for costs incurred in planning and securing approval for the gym. Third, the court found no credible evidence to support the Charter School's claims for return of the security deposit, conversion, tortious interference, retaliation, or abuse of process.

The trial court then considered the Community Center's claims and found that the Charter School had breached both the First and Second Leases when it relocated its schools to the Mettlers Road building three years before the leases expired. Thus, the court awarded the Community Center $921,000 in lost rent. Although the Community Center sought several types of additional damages, the trial court rejected those claims and limited the award to lost rent.

8

Thereafter, the Community Center moved for reconsideration, arguing that the trial court only awarded damages under the Second Lease and had mistakenly failed to award lost rents under the First Lease. The Charter School opposed that motion but did not file its own motion for reconsideration or to open the judgment. On August 5, 2020, the trial court issued an amended order of judgment, together with a "revised" opinion (the revised August 2020 judgment).

In the revised August 2020 judgment, the court granted the Community Center's motion for reconsideration acknowledging that it had made an error and had confused the two leases in calculating damages. Nevertheless, the court deemed the damages moot and instead focused on the requirement for physical education under New Jersey law. The court then reversed its prior findings and concluded that the Charter School had been effectively forced to leave because the Community Center interfered with construction of the bubble gym. The court also found that neither party established any monetary damages and, therefore, did not award damages to either party in the revised August 2020 judgment.

The Community Center appealed from the revised August 2020 judgment, and we addressed that appeal in our opinion in Central Jersey I. In Central Jersey

I, we reversed and vacated the revised August 2020 judgment finding it to be procedurally and substantively flawed. Slip op. at 19-25. We also reinstated the liability portion of the April 2020 judgment, holding that the trial court's original factual findings were supported by substantial credible evidence. Id. at 25-29. Therefore, this court held that no constructive eviction had taken place, and the Community Center was entitled to damages for lost rent.

Critical to this appeal, we also held that the record on the first appeal was insufficient to determine the appropriate amount of rent owed to the Community Center. Id. at 29-33. We therefore remanded the matter for the purposes of determining "the amount of lost rent due to the Community Center because of the Charter School's breaches of the leases." Id. at 33. We directed the trial court on remand to conduct an evidentiary hearing and to make findings of facts regarding whether the Community Center had made reasonable efforts to mitigate its damages under both the First and Second Leases. Id. at 32-33. We also directed that the trial court was to calculate the amount of rent the Charter School owed under both leases. Id. at 33. In doing so, we emphasized that the first trial judge had failed to make adequate findings in its April 2020 judgment regarding how much rent the Charter School owed under the First and Second

Leases and had not adequately explained its reasons for its award of $921,000. Id. at 30-31.

We also made it clear that no other damages were to be considered besides lost rent. In that regard, we explained:

> We discern no basis to reverse or disturb the trial court's original rulings that the Community Center was not entitled to other types of damages. Nor do we discern any basis to reverse or disturb the trial court's rejection of the Charter School's claims for the return of security deposits, moving or relocation expenses, or its claim of conversion of property left at the [B]uilding.
>
> [Id. at 33.]

Lastly, we directed that the amount of lost rent the Charter School owes "should be reduced by $70,000 for the security deposits and by $52,477 for the costs related to planning to build the bubble gym." Ibid. In other words, the total amount of lost rent owed to the Community Center was to be reduced by $122,477. Ibid.

On remand, the trial court did not hold an evidentiary hearing; rather, it heard oral arguments and allowed the parties to submit a series of supplemental briefs. On January 29, 2025, the trial court issued an order and a written statement of reasons. The court awarded the Community Center six months' worth of rent at $37,083.33 per month, totaling $222,499.98. From that amount,

11

the court offset the $122,477 and, therefore, entered a judgment in favor of the Community Center in the amount of $100,022.98.

In support of its order, the trial court issued a fifty-six-page opinion. Most of that opinion summarized the procedural history of this matter and the arguments presented by the parties. The court then held that it would only consider the claim for the lost rent and it would not consider any other damage claims. Thereafter, the court made a series of factual findings. First, it found that the Community Center "did all it could" to relet the space in the Building and mitigate its damages. Second, it found that the Community Center's proposed rent of $15 per square foot was a reasonable proposed rent and represented the fair market value of rent for other available premises. Third, the court found that the Charter School "took no actions to mitigate the Community Center's damages despite being able to and having an equal opportunity to mitigate." Relatedly, the court found "any shortcomings on the part of the Community Center regarding mitigation are excusable due to the Charter School's failure to mitigate." Fourth, the trial court found that the "Community Center did not reoccupy the [l]ower [s]chool space as its elementary school and daycare center operations had always occupied part of the [l]ower [s]chool space, even while the Charter School was a tenant." The court therefore

12

accepted the Community Center's argument that it was not required to subdivide or reconfigure the Building to find a new tenant. Fifth, the trial court found that "the subsequent sale of the Community Center's [B]uilding constituted mitigation efforts on the part of the Community Center."

Having made those findings, the court then stated: "[T]his court finds it appropriate to award the Community Center six months' worth of rent at $37,083.33 per month, totally $222,499.98." The court offered no explanation for its decision to award six months of rent. The court also did not explain why it only awarded rent under the First Lease and why it did not award rent under the Second Lease. Additionally, although the court found that the subsequent sale of the Community Center's Building constituted mitigating efforts, it did not explain how that sale factored into its decision.

The Community Center moved for reconsideration. On March 21, 2025, the trial court denied the Community Center's motion and issued a written statement of reasons and order. The court again gave no explanation for its decision to award six months of rent. Instead, the court reasoned that the Community Center "ha[d] not demonstrated [that the] [c]ourt acted in an arbitrary, capricious, or unreasonable manner."

13

The Community Center now appeals from the January 29, 2025 order and March 21, 2025 order denying reconsideration. The Charter School cross-appeals.

## II.

On this appeal, the Community Center makes three arguments. First, it contends the trial court's damage award was based on a misapplication of the law. Second, it contends the trial court failed to make adequate findings of facts and conclusions of law to support the reduced damage award as required by Rule 1:7-4. Finally, it asserts the trial court erred and abused its discretion by failing to award full contractual damages.

The Charter School opposes the Community Center's appeal and argues there is no basis for us to reverse the trial court's findings of facts. On its cross-appeal, the Charter School contends the trial court misapplied controlling case law regarding the landlord's duty to mitigate damages. The Charter School then asserts that the trial court should not have awarded any damages to the Community Center and instead should have entered a judgment in its favor for $122,497.

14

We vacate the January 29, 2025 order, as well as the March 21, 2025 order, and remand for further proceedings primarily for two reasons.  First, the trial court's decision did not fully conform with our remand instructions.  Second, although the court issued a thoughtful decision, it did not adequately explain several key factual determinations in accordance with Rule 1:7-4.  Consequently, on the current record, we cannot determine if those material factual determinations are supported by substantial credible evidence.

It is well settled that a trial court is bound by an appellate court's directives.  See, e.g., Tomaino v. Burman, 364 N.J. Super. 224, 232 (App. Div. 2003) (citing Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415 (1961)) (explaining "[i]t is beyond dispute that a trial judge has the responsibility to comply with pronouncements of an appellate court").  Adherence to instructions on remand "precisely as it is written" is the "peremptory duty" of a trial court.  Id. at 233 (quoting Jersey City Redevelopment Agency v. Mack Props. Co. No. 3, 280 N.J. Super. 553, 562 (App. Div. 1995)).  "Indeed, the very essence of the appellate function is to direct conforming judicial action."  Ibid. (citing In re Plainfield-Union Water Co., 14 N.J. 296, 303 (1954)).

Moreover, Rule 1:7-4 requires a trial court to issue written or oral findings explaining the basis for its decision. The rule requires a court to "state clearly its factual findings and correlate them with the relevant legal conclusions." Kas Oriental Rugs, Inc. v. Ellman, 407 N.J. Super. 538, 562 (App. Div. 2009) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)). In other words, "'[n]aked conclusions' do not suffice." Ibid. (quoting Curtis, 83 N.J. at 570). Indeed, "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). In the absence of an explanation, appellate courts are "left to conjecture as to what the judge may have had in mind." Ibid.; see also Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Curtis, 83 N.J. at 569-70) (explaining that "[f]ailure to make explicit findings and clear statements of reasoning 'constitutes a disservice to the litigants, the attorneys, and the appellate court'").

Initially, we clarify what was within the scope of our remand. In Central Jersey I, we made it clear that the remand was limited to determining the amount of lost rent due to the Community Center. Despite that clear instruction, the parties on remand made arguments for and against other types of damages. That improper tactic may have contributed to the trial court's failure to fully explain certain findings of facts when it finally got to the issue of lost rents. Be that as

it may, the trial court correctly determined that the only issue it should be deciding on remand was the Community Center's claims for lost rent. On that point, the trial court was correct.

In determining lost rent, the trial court needs to make two key determinations. First, it needs to determine the amount of time the Community Center was entitled to lost rents. The Charter School vacated the Building in September 2017. Because both the First and Second Leases ran through July 14, 2020, the Community Center is seeking thirty-four months of lost rent. In its January 29, 2025 opinion, the trial court did not explain why it awarded lost rents for a period of six months. The trial court also failed to explain why it selected six months in denying reconsideration. Accordingly, the record is devoid of any fact findings or reasoning concerning why the court selected six months as the appropriate period. We do not hold that six months was not an appropriate time, rather we cannot evaluate whether there are facts supporting a six-month period because the trial court provided no explanation for selecting six months as opposed to the thirty-four months sought by the Community Center.

Second, in determining lost rent, the court must determine whether the Community Center is entitled to lost rent under both the First and Second

17

Leases. In the January 29, 2025 statement of reasons, the court stated it was awarding rent "at $37,083.33 per month." That amount was the rent due under the First Lease. The court did not make any award for rent due under the Second Lease. More critically, the court did not explain why it was not awarding rent under the Second Lease. Indeed, the award was inconsistent with the court's factual finding that the Community Center did not reoccupy the space the Charter School had used for its lower school after the Charter School vacated the Building in September 2017.

One of the reasons we had remanded the matter the first time was because of a factual dispute of whether the Community Center expanded its daycare and preschool operations on the lower floor. The trial court never addressed that issue. The finding that the Community Center did not reoccupy the space was based on the trial court's determination that the Community Center's "elementary school and daycare center operations had always occupied part of the [l]ower [s]chool space, even while the Charter School was a tenant." That finding does not address the question of whether, after the Charter School vacated the Building, the Community Center expanded its operations and therefore used some or all the space on the lower floor thereby mitigating its damages under

the Second Lease. On the second remand, the trial court needs to address and make an express finding on this issue.

A third issue that needs to be clarified on the second remand is whether and when the Community Center sold its building. The trial court initially ruled it would not consider the sale of the Building on remand. When it made its fact findings, however, the trial court stated: "[T]he subsequent sale of the Community Center's [B]uilding constituted mitigation efforts on the part of the Community Center." The trial court did not explain how that finding impacted its award of lost rents.

Whether and when the Community Center sold the Building is relevant to determining the Community Center's claim for lost rents. Efforts to sell the Building would demonstrate the Community Center's efforts to mitigate its damages. See McGuire v. City of Jersey City, 125 N.J. 310, 320 (1991) (explaining that a landlord's subsequent sale of its rental property "constitute[s] mitigation"). Moreover, once the Building was sold, the Community Center's claim for lost rents would end. See ibid. (holding that because the "sale price" of the landlord's rental properties "approximated the value" of future rent, "the sale effectively ended [the landlord's] entitlement to damages for lost rental

19

income after the time of sale").  So, on the second remand, the trial court needs to make findings on whether and when the Community Center sold the Building.

IV.

We reject the arguments raised by the Charter School in its cross-appeal. In Central Jersey I, we determined that the record established that the Charter School had paid $70,000 for security deposits, consisting of $30,000 under the First Lease and $40,000 under the Second Lease.  The record also established that the Charter School had incurred $52,477 for the costs related to planning to build the bubble gym.  Consequently, we directed that on remand "the amount of lost rent should be reduced by $70,000 for the security deposits and by $52,477 for the costs related to planning to build the bubble gym."  Central Jersey I, slip op. at 33.  We were clear in directing that the $122,477 was only to be treated as an offset to lost rents.

V.

In summary, we reverse and vacate the January 29, 2025 order and again remand this matter for further proceedings to establish the amount of lost rent due to the Community Center.  We also vacate the March 21, 2025 order.  On the second remand, the trial court is to determine whether it needs an evidentiary hearing and, if it determines it does not, it needs to explain the reasons why.

20

The court then needs to make factual findings, including findings on (1) the number of months the Community Center is entitled to lost rents; (2) whether the Community Center is entitled to lost rents under both the First and Second Leases, and relatedly whether the rent under the Second Lease should be reduced by some amount if the Community Center expanded its operations into some or all the space previously used by the Charter School on the lower floor; and (3) whether and when the Community Center sold the Building and how those findings factor into the court's award of lost rents. All those findings, as well as other findings made by the trial court on remand, need to be explained in accordance with <u>Rule</u> 1:7-4. Moreover, any legal conclusions drawn from the factual findings are also to be explained in accordance with <u>Rule</u> 1:7-4. Finally, any amount of lost rent is to be offset by $122,477.

Reversed, vacated, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

21

A-2162-24