JOHN G. FLANIGAN, AS SUBSTITUTED ADMINISTRATOR OF THE ESTATE OF MARY McFEELY, DECEASED, PLAINTIFF-APPELLANT, v. JOSEPH B. McFEELY, AS EXECUTOR OF THE ESTATE OF BERNARD N. McFEELY, DECEASED, DEFENDANT-RESPONDENT.

Argued November 21, 1955—Decided January 9, 1956.

Mr. *Victor S. Kilkenny* argued the cause for appellant (*Messrs. Otis & Kilkenny,* attorneys; Mr. *Kilkenny* and Mr. *Isadore Glauberman,* of counsel).

Mr. *Abraham J. Slurzberg* argued the cause for respondent (*Mr. Joseph B. McFeely,* attorney; Mr. *Slurzberg* of counsel).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. Plaintiff, the substituted administrator of the estate of Mary McFeely, deceased, appeals from an adverse judgment entered on a jury verdict in the Superior Court, Law Division, Hudson County. We certified the appeal of our own motion while pending in the Appellate Division.

Mary McFeely died intestate on June 4, 1942, and on June 10, 1942 her brother, Bernard N. McFeely, was appointed administrator of her estate when the other next of kin executed a renunciation in his favor. On August 8, 1949 Bernard N. McFeely died testate and the defendant, Joseph B. McFeely, qualified as executor of his will. The complaint herein charges that Bernard did not file an inventory, or account, or fully perform his duties as administrator and demands of his executor an accounting, and judgment, less lawful deductions, in the amount of $292,-448.86, the value of Mary's estate as reported by Bernard in his transfer inheritance tax return. The suit was brought after Bernard's executor unsuccessfully resisted the appointment of the substituted administrator. See *In re McFeely's Estate,* 11 *N. J. Super.* 518 (*App. Div.* 1951), affirmed 8 *N. J.* 9 (1951); see also 10 *N. J.* 133 (1952).

This is a statutory action authorized by *N. J. S.* 3*A* :6–46. An action of this nature has been provided for since *Paterson's Laws, p.* 154, *section* 3, passed March 2, 1795, and stems from the statute 4 and 5 *William & Mary, ch.* 24; *Schenck v. Schenck's Ex'rs,* 3 *N. J. L.* 149 (*Sup. Ct.* 1809). The statute in pertinent part now provides:

"A substituted administrator * * * shall be entitled to demand and receive *the whole of the personal estate of his decedent,* except such portion thereof as shall have been properly and justly paid out and distributed. He may sue for and recover all such assets, or their equivalent whether legal or equitable, from any person, his heirs or personal representatives, chargeable therewith, and * * * *shall in any such litigation represent the creditors and all persons beneficially interested in the estate.*" (Emphasis ours)

The executor's answer to the demand of the substituted administrator for the turnover of Mary's estate, less lawful deductions, was that on June 10, 1942, the day of Bernard's appointment as administrator, the other next of kin of Mary, 11 in number, transferred their interests to Bernard by a writing of that date. The substituted administrator filed a reply to the answer alleging that the "said paper * * * was the product of fraud in the *factum*" in that Bernard secured the signatures of the 11 next of kin thereto by "falsely and fraudulently representing to the signers thereof that they were executing a correctory form of renunciation, when in truth and in fact * * * the said paper purported to be a legal instrument of a different nature and character, and which said instrument purported to be a transfer of their right, title and interest in the Estate of Mary McFeely, deceased, and the said beneficiaries would not have executed this paper, if its true nature had been divulged to them, and said instrument was executed by the beneficiaries in reliance upon the representations made to them that it was a correctory renunciation."

The executor thereupon moved for a summary judgment on the ground that the alleged wrong was not a wrong to the estate but rather to the individual beneficiaries and that they alone had standing to attack the transfers. Summary judgment was granted upon that ground, but on appeal the

Appellate Division reversed the summary judgment, 26 *N. J. Super.* 522, 525 (1953), certification denied 13 *N. J.* 295 (1953), the ground of reversal being that

"The statute explicitly authorizes the substituted administrator to sue in behalf of 'all persons beneficially interested in the estate.' * * *

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Defendant's suggestion that the only parties in interest are the individual beneficiaries who challenge the assignment, ignores the representative capacity which the statute confers upon the substituted administrator. He speaks for the beneficiaries and may assert in their behalf their challenge to the adequacy of the defense. That defendant may prevail as to all beneficiaries thus represented does not militate against the right of the plaintiff to speak for them. * * *"

■ When, following the remand, the case came on for trial and the proofs were in the trial judge nevertheless effectually changed the action from one by the substituted administrator into an action in the individual right of certain of the next of kin. He refused to submit the case as one of the substituted administrator in his representative capacity as spokesman for all the beneficiaries and limited the jury to a decision whether fraud was practiced upon each of 4 of the 11 next of kin. Only 6 of the original 12 of Mary's next of kin were still living at the time of the trial. Four of the survivors testified for the substituted administrator and the remaining two were witnesses for the defendant executor—in fact had been allowed to intervene as parties defendant with him. The sole issue tried was that identified in the pretrial order, *viz.*, "whether there was fraud which vitiates the writing of June 10, 1942." It is not necessary to detail the evidence. It is enough to note that it was amply sufficient to present a jury question as to that issue. The alleged fraud was said to have been practiced at a meeting at Bernard's home at which all the next of kin and Bernard's lawyer were present. The testimony of the four next of kin who testified for plaintiff as to the events of that meeting, properly appraised by the trial judge as sufficient to raise a jury question, was more corroborated than opposed by the versions of the two next of kin who testified for the defendant executor.

But the trial judge was concerned that the deceased next of kin may have had prior knowledge of the contents of the disputed paper when they came to the meeting. Yet none of the next of kin who did testify said that he or she was given such information before the meeting; and in that circumstance the jury might properly have inferred that similarly nothing was said to any of the deceased next of kin. In any event, we cannot see how the omission by the substituted administrator to offer proof negativing that possibility created an infirmity in his case as representative, under the statute, of "all persons beneficially interested in the estate." Nor do we perceive such infirmity from the fact that two of the next of kin sided with the defendant executor.

■ The substituted administrator's right to the turnover of "the whole of the personal estate of his decedent" was pegged upon the alleged invalidity for fraud in the *factum* of the instrument of assignment, and his proofs, indeed even when taken with defendant's proofs, sufficed to support a jury finding that fraud, if practiced, was practiced upon the whole group of 11. And the testimony that the contents of the paper were not in fact made known to the group sufficed to overcome the *prima facie* effect of the acknowledgment appended to the paper reciting that Bernard's lawyer took their acknowledgments and made known the contents to them.

However, over the vigorous objections of plaintiff's counsel, the trial judge restricted the jury to a determination whether fraud was practiced upon the four next of kin who testified for the plaintiff. He did this by instructing the jury:

"At this point I wish to make it clear that the only issues before you members of the jury are four in number—namely, one, was the signature of John McFeely to the assignment obtained by fraud; two, was the signature of Alice Gregory obtained by fraud; three, was the signature of Catherine Lehbrink obtained by fraud; four, was the signature of Veronica Haggerty obtained by fraud."

And the judge limited the jury to the rendition of special verdicts as to each of the named next of kin, requiring answers to each of four separate questions, "What is your finding as to whether or not the signature of [naming the

person] was placed by her [him, in the case of John] on the paper called assignment, dated June 10, 1942?" The jury's answer to each question, by vote of ten to two, was "no fraud perpetrated."

■ This action of the trial judge was, in our view, plain error prejudicial to the statutory right of the substituted administrator to a determination of the issue, properly framed by the pretrial order and pleadings and made the law of the case by the Appellate Division, whether the substituted administrator as the representative of "all persons beneficially interested in the estate" was entitled to the turnover of "the whole of the personal estate of his decedent" less allowable deductions. The required course at the trial, in light of the proofs and in view of the pleadings, the pretrial order, the statute, and the Appellate Division's holding, was submission of the single question whether the assignment in its entirety was vitiated by fraud. If the jury determined that it was, the substituted administrator was entitled to the judgment demanded, otherwise, to no judgment at all.

■ Moreover, although not advanced by plaintiff as a reason for reversal, we are constrained to observe that the action of the trial judge was not in compliance with the mandate of the Appellate Division on the reversal of the summary judgment. The principle, of course, is settled that the trial court is under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written. *In re Plainfield-Union Water Co.*, 14 *N. J.* 296, 303 (1954); *Hellstern v. Smelowitz*, 17 *N. J. Super.* 366, 371 (*App. Div.* 1952); *McGarry v. Central R. Co. of New Jersey*, 107 *N. J. L.* 382 (*E. & A.* 1931); *Jewett v. Dringer*, 31 *N. J. Eq.* 586 (*Ch.* 1879). Mr. Justice Heher said in the *Plainfield-Union Water Co.* case:

"The mandate is a judicial precept that must be enforced as written. Relief from its directions, even though manifestly erroneous, can be had only in the appellate court whose judgment it is. *Isserman v. Isserman*, 2 *N. J.* 1 (1949); *Oswald v. Seidler*, 138 *N. J. Eq.* 440 (*E. & A.* 1946); *Kurth v. Maier*, 134 *N. J. Eq.* 511 (*E. & A.* 1944); *Wemple v. B. F. Goodrich Co.*, 127 *N. J. Eq.* 333 (*E. & A.* 1940); *Briggs v. Pennsylvania R. Co.*, 334 *U. S.* 304, 68

*S. Ct.* 1039, 92 *L. Ed.* 1403 (1948). The subordination of the inferior tribunal is of the very essence of the appellate function; the mandate is the process directed to the execution of the appellate judgment, and is therefore a command to be obeyed. The reinvestiture of jurisdiction in the inferior tribunal is in consonance with that judgment, and qualified accordingly. The appellate judgment becomes the law of the case; and the mandate is the direction for conforming judicial action. *In re Sanford Fork & Tool Co.,* 160 *U. S.* 247, 16 *S. Ct.* 291, 40 *L. Ed.* 414 (1895). The duty is simply one of compliance with the precept."

And in the *Hellstern* case Judge Jayne noted:

"* * * The rule, however, to which we refer is certainly peremptory in its relation to what is spoken of as the law of the case, that is, to the principle of law which the appellate tribunal has expressly declared to be applicable to the particular cause of action."

Not only did the Appellate Division's opinion settle as the law of this case that it was "the right of the plaintiff to maintain this representative action," but it directed "further proceedings in harmony with this opinion." In addition, the mandate, which issued on that opinion, expressly ordered that "the proceedings be remanded to the said Superior Court, Law Division, there to be proceeded with in accordance with the rules of practice relating to that Court *consistent with the opinion of this court.*" It is apparent that the action taken by the trial judge was not consistent, but inconsistent, with the principles governing the action laid down by the Appellate Division.

It is true that the Appellate Division opinion also suggests that the statutory action of the substituted administrator might in a proper case be converted into a joint action with the beneficiaries in their individual right. However, the court did not hold that this was such a case but on that score remitted the parties to an application to the trial court "to join the beneficiaries as plaintiffs." We have no occasion to decide whether in light of the special nature of the statutory action the joinder suggested by the Appellate Division would be proper or permissible, and expressly reserve that question. It suffices for present purposes that on the remand

the trial court denied a motion of defendant executor to add as parties plaintiff all surviving beneficiaries but the two who sided with him, and the Appellate Division dismissed the defendant executor's appeal from that action.

Reversed and remanded for a new trial.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, JACOBS and BRENNAN—5.

*For affirmance*—Justices HEHER and BURLING—2.