262 N.J. Super. 264 (1993)
620 A.2d 1068
EXXON CORPORATION, THE BF GOODRICH COMPANY, UNION CARBIDE CORPORATION, AND MONSANTO COMPANY, PLAINTIFFS-APPELLANTS,
v.
ROBERT HUNT, ADMINISTRATOR OF NEW JERSEY SPILL COMPENSATION FUND, CLIFFORD A. GOLDMAN, TREASURER OF THE STATE OF NEW JERSEY, SIDNEY GLASSER, DIRECTOR OF THE DIVISION OF TAXATION, JERRY F. ENGLISH, COMMISSIONER OF ENVIRONMENTAL PROTECTION, AND THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 1993.
Decided February 22, 1993.
*266 Before Judges MUIR, Jr. and KESTIN.
Carlin, Maddock, Fay & Cerbone, attorneys for appellants (John J. Carlin, Jr. and Donald J. Fay, on the brief).
Robert J. Del Tufo, attorney for respondents (Mary C. Jacobson, Deputy Attorney General, of Counsel; Eileen P. Kelly, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
The procedural history and factual background of this case have been set out in prior opinions of this court, the Tax Court, the New Jersey Supreme Court and the United States Supreme Court. During the remand proceedings ordered by the New Jersey Supreme Court, 109 N.J. 110, 534 A.2d 1 (1987), plaintiffs moved in the Tax Court for an order mandating a full refund of those Spill Fund taxes which were attributable to purposes held by the United States Supreme Court to have been pre-empted by the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). The statutory provisions upon which the pre-emption decision was based have since been repealed.
Plaintiffs contended that the recent holding of the United States Supreme Court in McKesson v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), required a modification of the remedy fashioned by the New Jersey Supreme Court at 109 N.J. 110, 128-133, 534 A.2d 1 (1987), on remand from the United States Supreme Court, 475 U.S. 355, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986). The Tax Court judge held, by reason of the "law of the case" rule, Flanigan v. McFeely, 20 N.J. 414, 420, 120 A.2d 102 (1956); In *267 re Plainfield-Union Water Co., 14 N.J. 296, 102 A.2d 1 (1954), that he was obliged to follow strictly the mandate of the New Jersey Supreme Court in this case and could not modify it in any way. He saw a motion for reconsideration to the New Jersey Supreme Court as the only proper means for dealing with a later decision of the United States Supreme Court which might be interpreted as invalidating the remedial mechanism developed by the New Jersey Supreme Court to address the limitations imposed by supervening federal law as declared and applied by the United States Supreme Court in this case.
A final order on remand was then entered. It denied plaintiffs' motion and established the pre-empted expenditures from the New Jersey Spill Fund, as agreed by the parties when calculated according to the guidelines established by the New Jersey Supreme Court, at $8,142,094.07.
Plaintiffs appeal the Tax Court's denial of the relief they sought under the authority of McKesson. We need not address the question whether the "law of the case" rule was correctly applied to deny the relief sought by plaintiffs or whether the "time of decision" rule should have been applied instead. See State Dept. of Envtl. Protect. v. Ventron Corp., 94 N.J. 473, 468 A.2d 150 (1983). We have analyzed McKesson and have determined that it does not require the result contended for by plaintiffs. Accordingly, we affirm on the merits.
We are not persuaded that New Jersey's range of choices for bringing itself into compliance with the requirements of supervening federal law should be narrower than those available to Florida in McKesson. There, the United States Supreme Court held that optional means were available to the State of Florida to cure a taxing measure found to be invalid because it discriminated against interstate commerce. The State was obliged to provide a taxpayer who had been required to pay a tax before challenging its validity with "meaningful, backward-looking relief to rectify any unconstitutional deprivation", 496 U.S. at 31, 110 S.Ct. at 2247, 110 L.Ed.2d at 32, but it was not required *268 to refund the invalid tax if it chose other effective means for eliminating the discrimination.
When a State penalizes taxpayers for failure to remit their taxes in timely fashion, thus requiring them to pay first before obtaining review of the tax's validity, federal due process principles long recognized by our cases require the State's postdeprivation procedure to provide a "clear and certain remedy" ... for the deprivation of tax moneys in an unconstitutional manner. In this case, Florida may satisfy this obligation through any form of relief, ranging from a refund of the excess taxes paid by petitioner to an offsetting charge to previously favored distributors, that will cure any unconstitutional discrimination against interstate commerce during the contested tax period. The State is free to choose which form of relief it will provide, so long as that relief satisfies the minimum federal requirements we have outlined.
[McKesson v. Division of Alc. Bev., supra, 496 U.S. at 51-52, 110 S.Ct. at 2257-58, 110 L.Ed.2d at 45.] [citations omitted]
The logic of McKesson as applied to this case is that if a workable means for curing the pre-emption impairment of the Spill Fund tax short of a refund is employed, then the plaintiffs' constitutional right to an effective remedy will not have been violated.
Plaintiffs contend that the infirmities of a tax which has been determined to be invalid by reason of pre-emption cannot be adequately remedied in any way short of refunding that portion of the tax held to have been pre-empted. No adequate rationale is offered to support this position other than that it is required by McKesson.
Under McKesson, a state has a choice of options in remedying a discriminatory tax because, although the tax itself represents a valid exercise of state power, either its incidence or the manner in which it is administered results in disfavored treatment for persons and entities in inter-state commerce as compared to those involved in intra-state commerce. Elimination of the disparity extinguishes the discrimination.
Here too, the State has validly exercised its power to enact the Spill Fund tax. The tax itself has not been held invalid for any reason. The enactment has been found to be overly broad in its scope, however, subsuming objectives which were, for a time, pre-empted by federal law. The United States Supreme *269 Court held in this case that CERCLA expressly pre-empted the Spill Fund from being used
(1) to finance governmental cleanup of hazardous waste sites; [and] (2) to reimburse third parties for cleanup costs ... except to the extent ... [of providing] the 10% state share of remedial costs.
[475 U.S. at 375-76, 106 S.Ct. at 1115, 89 L.Ed.2d at 382.]
Four other purposes of the Spill Fund were expressly held not to have been pre-empted. Id.
It is also clear from sources adverted to by the New Jersey Supreme Court, 109 N.J. at 128-132, 534 A.2d 1, that the various objectives of the Spill Fund legislation are long-range and expensive. The New Jersey Supreme Court in its earlier affirmance, 97 N.J. 526, 530, 481 A.2d 271 (1984), observed:
Moreover, Judge Evers alternatively held that even if Spill Fund tax monies could not be collected for general containment and cleanup purposes, "the [S]pill [F]und law nevertheless encompasses many other areas to which such monies could be devoted which are clearly outside the reach of § 114(c) and which may very well be of sufficient magnitude to sustain the [S]pill [F]und tax." [Exxon Corp. v. Hunt, 4 N.J. Tax 294 at 315 (1982)]. Thus, the court held that "even if § 114(c) of [Superfund] could be construed to preempt part of [S]pill [F]und, the * * * nonpreempted areas are more than sufficient to sustain its continued validity." Id. at 320. [alterations in original] [footnotes omitted]
The taxes paid by the plaintiffs and others during the period of pre-emption are presumptively valid as levies to fund those Spill Fund objectives that were determined not to have been pre-empted by federal law. Cf. East Orange v. Livingston Township, 102 N.J. Super. 512, 531, 246 A.2d 178 (Law Div. 1968), aff'd o.b., 54 N.J. 96, 253 A.2d 546 (1969). Thus, the plaintiffs can have no enforceable claim to a refund of any portion of the funds as long as all Spill Fund revenues expended for pre-empted purposes during the period of pre-emption are returned to the Fund from general revenues within a reasonable period of time. The CERCLA prohibition against taxing for specified (pre-empted) purposes will thus have been effectively cured. The amounts expended which represent revenues that were impermissibly applied will have been replaced and made available for uses which are no longer pre-empted or never were. This conclusion is of a piece with the United *270 States Supreme Court's rationale in McKesson; and is precisely the remedy established by the New Jersey Supreme Court, 109 N.J. at 128-133, 534 A.2d 1, on remand from the United States Supreme Court. There is no reason to apprehend that, measured by the standard of McKesson, the six month period for restoration of the expended funds is unreasonable. No appeal has been taken from the trial court's determination that the amount so expended was $8,142,094.07.
Affirmed.