NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5482-11T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

  v.

LARRY R. HENDERSON,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 17, 2013**
>
> **APPELLATE DIVISION**

Argued September 17, 2013 — Decided October 17, 2013

Before Judges Fisher, Espinosa and Koblitz.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 03-09-3383.

Joshua D. Sanders, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Mr. Sanders, of counsel and on the brief).

Deborah Bartolomey, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Ms. Bartolomey, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In the wake of the Supreme Court's landmark decision in the earlier appeal in this matter, State v. Henderson, 208 N.J. 208

(2011), we consider defendant's appeal of the trial court's more recent refusal to exclude eyewitness identification evidence. In examining the issues, we (1) briefly outline the relevant factual circumstances and earlier proceedings, then (2) describe those matters not before us,[1] and finally (3) review the trial court's decision at the most recent Wade hearing,[2] which was based on the test devised by the Supreme Court in the earlier appeal that replaced the test utilized in this State since at least State v. Madison, 109 N.J. 223 (1988).

I

Rodney Harper was shot in Camden in the early morning hours of January 1, 2003. Harper and James Womble were drinking and smoking crack that evening at a friend's apartment. Harper left prior to midnight and returned sometime between 2:00 and 2:30 a.m. Soon after, two men forcibly entered the apartment. Womble knew one of them, codefendant George Clark, who arrived to collect money from Harper. Womble did not know the other intruder.

---

[1] Judges Espinosa and Koblitz do not join in Section II of this opinion.

[2] United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967).

A-5482-11T3

Harper and Clark went into another room, while the unknown intruder kept Womble away at gunpoint in a hallway. Womble heard an argument in the other room and then a gunshot. As Clark and his confederate departed, Clark warned Womble not to "rat [him] out, I know where you live." Henderson, supra, 208 N.J. at 221. Harper died on January 10 from a gunshot wound to the chest.

Womble was questioned by Camden County Detective Luis Ruiz and Investigator Randall MacNair on January 11. As the Supreme Court recounted, Womble told them "he was in the apartment when he heard two gunshots outside, that he left to look for Harper, and that he found Harper slumped over in his car in a nearby parking lot, where Harper said he had been shot by two men he did not know." Ibid.

In an interview the following day, the officers confronted Womble with inconsistencies in his prior statement. Womble responded that he was in fear of retaliation but decided to "come clean." He told the officers of the intrusion and how one culprit held him at gunpoint while the other argued with and eventually shot Harper.

On January 14, the officers had Womble view a photographic array. The nature of that identification has been thoroughly described in the Supreme Court's opinion, id. at 222-25, as well

3

as our own, State v. Henderson, 397 N.J. Super. 398, 406-07 (App. Div. 2008). Essentially, in initial compliance with the Attorney General's Guidelines for photographic identifications,[3] the array was presented to Womble by Detective Thomas Weber, who was not investigating the case.[4] Weber properly presented Womble with eight photographs, one of which depicted defendant, and the others were of African-American males of the same approximate age and appearance as defendant. 208 N.J. at 222. The photographs were also properly shown to Womble one by one. As the Court observed, "Womble quickly eliminated five . . . reviewed the remaining three, discounted one more," and then said "he 'wasn't 100 percent sure of the final two pictures.'" Id. at 223.

Weber informed the other officers that Womble had narrowed it down to two photographs but could not make a final identification. MacNair and Ruiz then entered the interview room and spoke to Womble; Weber was not present during this discussion. In our earlier opinion, we summarized what the

---

[3]Office of the Attorney General, Attorney General Guidelines for Preparing and conducting Photo and Live Lineup Identification Procedures (2001).

[4]The Attorney General Guidelines direct that primary investigators should not administer photo or live lineup identification procedures "to ensure that inadvertent verbal cues or body language do not impact on a witness." Id. at 222 (citations omitted).

testimony at the earlier <u>Wade</u> hearing revealed about what happened when the investigating officers spoke to Womble:

> M[a]cNair testified . . . that he felt Womble was "holding back from us," and so he and Ruiz "wanted to go in and to clarify and be clear on what he was saying to us." He also testified that Womble was concerned about the safety of his elderly father because the second gunman was still at large. M[a]cNair testified that, in order to put Womble's mind at ease, he "told him to focus, to calm down, to relax and that any type of protection that [he] would need, any threats against [him] would be put to rest by the Police Department." Womble then responded that he could make an identification. With that, M[a]cNair and Ruiz left the room.
>
> Officer Weber re-entered the room and again showed Womble the array. This time, according to Weber, Womble "slammed his hand down on the table and said, '[t]hat's the mother fucker there,'" thus positively identifying defendant as one of the men involved in the shooting of Harper.
>
> [397 <u>N.J. Super.</u> at 406.]

The original trial judge conducted a <u>Wade</u> hearing but concluded the procedure was not suggestive and permitted the State to use at trial evidence of Womble's out-of-court identification of defendant as the man who held him at gunpoint in the hallway while Clark shot Harper in another room.

At trial, as the Supreme Court observed, "[t]he primary evidence against defendant . . . was Womble's identification[5] and Detective MacNair's testimony about defendant's post-arrest statement." Id. at 226 (in a footnote at the conclusion of this sentence, the Court observed that Clark's recorded statement, which "placed Henderson at the apartment but largely exculpated him," was also played for the jury).

Defendant was acquitted of murder and aggravated manslaughter but convicted of reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), and other offenses, and later sentenced to an aggregate eleven-year prison term subject to a nearly six-year period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant thereafter appealed, and we determined that the trial judge misapplied the Manson/Madison test[6] for determining

_____

[5] Womble also made an in-court identification of defendant. As the Court noted, "Womble had no difficulty identifying defendant at trial eighteen months later." Id. at 225. Indeed, there is hardly a more suggestive identification procedure than that which occurs at trial, where the only likely person to be identified is the one seated next to defense counsel. See Madison, supra, 109 N.J. at 243; see also Perry v. New Hampshire, __ U.S. __, __, 132 S. Ct. 716, 727, 181 L. Ed. 2d 694, 710 (2011).

[6] Both then and now the federal constitutional rights triggered by such circumstances are governed by the procedure outlined in Manson v. Braithwaite, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). Until Henderson's prior appeal, this same procedure
(continued)

the reliability of an out-of-court eyewitness identification — because the trial judge failed to conclude that the identification procedure was impermissibly suggestive and, thus, failed to analyze the Manson/Madison reliability factors in light of the corrupting effect of the suggestive process — and we remanded for a new Wade hearing before a different judge. Henderson, supra, 397 N.J. Super. at 416-17. We also held that if the new hearing required exclusion of the out-of-court identification, then the trial judge was to determine whether the witness could make an in-court identification from an independent source. Id. at 417. And, we lastly concluded that "if the Wade or taint hearings require the suppression of evidence then defendant is entitled to a new trial, but not otherwise." Ibid.

The Supreme Court granted certification, State v. Henderson, 195 N.J. 521 (2008), and, later, summarily remanded to the trial court for a plenary hearing "to consider and decide whether the assumptions and other factors reflected in the two-part Manson/Madison test, as well as the five factors outlined in those cases to determine reliability, remain valid and

_____

(continued)
was adopted for purposes of defining the limits of our state constitution in this regard. See Madison, supra, 109 N.J. at 233, and cases cited therein.

appropriate in light of recent scientific and other evidence." Henderson, supra, 208 N.J. at 306. The Court appointed Judge Geoffrey Gaulkin, P.J.A.D. (retired and temporarily assigned on recall) to preside at the remand hearing. Id. at 228.

On the basis of evidence adduced at the remand hearing conducted by Judge Gaulkin, the Court rendered its landmark decision, significantly altering the methodology for considering the role of suggestive police identification procedures and ascertaining the reliability of eyewitness identifications. Id. at 288-93. At the same time, the Court considered the reach of its decision and concluded that the new rule would apply only to future cases "except for defendant Henderson" and the defendant in a companion case. Id. at 302. As for Henderson, the Court held he was entitled to "an expanded hearing consistent with the principles outlined" in its decision. Id. at 300. The Court further mandated that "[i]f the trial court finds that the identification should not have been admitted, then the parties should present argument as to whether a new trial is needed," and that "[i]f [the out-of-court] identification was properly admitted, then defendant's conviction should be affirmed." Ibid.

In accordance with the Court's mandate, Judge Samuel D. Natal conducted a plenary hearing,[7] at which the State called MacNair, Ruiz and Weber to testify; defendant called Assistant Prosecutor Christine Shah and Womble as witnesses. Based on his view of this evidence, Judge Natal concluded that the application of the new test announced in Henderson did not require exclusion of the out-of-court identification.

Defendant again appeals, arguing the judge failed to follow Henderson's edicts in the following ways:

> A. The Trial Court Failed to Find Compliance With Various System Variables By Clear And Convincing Evidence.
>
> B. The Trial Court Failed to Properly Find And Weigh The Effect Of Various Estimator Variables.
>
> > 1. The Trial Court Erred In Its Analysis Of the Duration Estimator Variable.
> >
> > 2. The Trial Court Erred By Failing To Find The Weapon Focus Estimator Variable.
> >
> > 3. The Trial Court Erred In Its Analysis Of The Stress Estimator Variable.

---

[7]In our earlier decision, we mandated the conducting of a new Wade hearing by a different judge. 397 N.J. Super. at 416-17. Because the original trial judge had retired in the interim, the Supreme Court recognized that particular issue had been rendered moot. 208 N.J. at 300 n.12.

4. The Trial Court Erred In Its Analysis Of The Distance And Lighting Estimator Variables.

5. The Trial Court Erred In Its Analysis Of The Intoxication Estimator Variable.

6. The Trial Court Erred In Its Analysis Of The Memory Decay Estimator Variable.

C. Even If the Trial Court Found Compliance With Various System Variables By Clear And Convincing Evidence, And Even If The Findings As To The Various Estimator Variables Pass Muster, The Trial Court Failed [To] Properly Weigh The Totality Of The Effect Of The Various Estimator Variables In Conjunction With The System Variables.

We reject these arguments and affirm.

II

Before turning to the issues raised by defendant in this appeal, this section of this opinion, which as noted in footnote 1 Judges Espinosa and Koblitz do not join in, makes note, for the sake of completeness, of two issues: one that is not before us and another not open for question.

A

In Henderson, the Court observed it had only altered "the State's framework for evaluating eyewitness identification evidence," id. at 287 (emphasis added), recognizing it had "no authority, of course, to modify Manson," id. at 287 n.10. This

ostensibly left open to defendant the opportunity to continue to seek exclusion of the eyewitness identification evidence pursuant to the unaltered federal <u>Manson</u> test.[8] Naturally, if <u>Henderson</u> provides greater state constitutional rights to the accused than offered by federal constitution principles, the difference between the two tests is inconsequential. But the assumption that <u>Henderson</u> grants greater individual rights than does <u>Manson</u> is not as obvious as it has been in other circumstances where our Supreme Court recognized more expansive state constitutional rights. <u>See</u>, <u>e.g.</u>, <u>Lewis v. Harris</u>, 188 <u>N.J.</u> 415, 456-57 (2006); <u>State v. McAllister</u>, 184 <u>N.J.</u> 17, 32-33 (2005); <u>State v. Hempele</u>, 120 <u>N.J.</u> 182, 202-03 (1990); <u>State v. Hunt</u>, 91 <u>N.J.</u> 338, 346-47 (1982).

Defendant argues that the <u>Manson</u> test, as previously described by our Supreme Court, placed the burden of persuasion for pretrial screening of suggestive eyewitness identifications

---

[8]The Supreme Court's mandate does not foreclose the pursuit of this federal argument. The Court's judgment in <u>Henderson</u> "modif[ied] and affirm[ed] the judgment of the Appellate Division." <u>Id.</u> at 304. Our judgment had reversed the trial judge's denial of exclusion of the identification evidence without distinction between defendant's federal and state constitutional rights because there was then no distinction between the legal framework applicable to those rights. The Supreme Court in <u>Henderson</u> did not reverse our judgment, which reversed the trial court, so it may be assumed the federal avenue remained open to defendant following the Supreme Court's mandate regarding the new state constitutional framework.

on the prosecution.  See Madison, supra, 109 N.J. at 245 (citing Wade, supra, 388 U.S. at 240, 87 S. Ct. at 1939, 18 L. Ed. 2d at 1164-65, in describing the prosecution's "formidable" burden of "proving by clear and convincing evidence" that any identifications of the defendant, whether in or out of court, "had a source independent of the police-conducted identification procedures"), and the Attorney General has not argued to the contrary.[9]

Certainly a shift in the burden of persuasion from the prosecution to the defense in the pretrial screening process could form the basis for a legitimate argument that the Henderson state constitutional framework makes less likely an exclusion of out-of-court identification evidence than does the existing federal framework.  If that were the case, then it would have behooved defendant to seek suppression pursuant to the federal test as well.  But the premise for such an argument is not apparent.  Henderson held that, under the new framework, the ultimate burden of persuasion in the pretrial screening process "remains" on the defendant, Henderson, supra, 208 N.J.

_____

[9]The matter is not entirely free from doubt.  The Supreme Court of the United States — from Wade to Perry — has consistently omitted a description of the nature of the burden of persuasion regarding whether suggestiveness has corrupted the reliability of an out-of-court identification or upon whom that burden rests.

at 289, a word which strongly suggests the Court did not believe its new framework altered the existing Manson allocation of the burden of persuasion.

In any event, at oral argument in this appeal, defendant conceded he is not arguing the trial judge erred in denying exclusion pursuant to federal constitutional principles[10] and, in fact, he has not briefed it.[11] Accordingly, that question is not before us.

B

Second, as we have already observed, the Supreme Court concluded that defendant was entitled to the benefit of the new rule, id. at 302, which not only altered the method for pretrial screening of eyewitness identifications, but also mandated modified jury instructions to include the various new factors relevant in assessing the reliability of eyewitness

---

[10]The trial judge, in fact, did not analyze the evidence pursuant to the Manson standard and it appears defendant did not urge that he do so. An argument not presented in the trial court is not cognizable on appeal. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

[11]At oral argument, defendant suggested Perry v. New Hampshire somehow foreclosed his federal argument. Perry, however, determined only that federal constitutional precepts do not require pretrial screening for reliability where the suggestive circumstances were not arranged by law enforcement officers. __ U.S. at __, 132 S. Ct. at 730, 181 L. Ed. 2d at 713. This exception is not implicated here, and there is nothing in the Court's opinion in Perry that would suggest the federal Manson test has been altered or modified in any way.

identification evidence, id. at 288. The Court's ultimate judgment as applied to defendant, however, provided him only with the benefit of the new pretrial screening approach. That is, the Court held defendant would only be permitted to seek a new trial if he succeeded in having the identification evidence excluded at the plenary hearing; in the event the trial judge held the identification evidence was properly admitted, the Court commanded that "defendant's conviction should be affirmed." Id. at 300. Defendant was not given the benefit of the new rule regarding the manner in which juries should be instructed on reliability because his conviction — with the denial of his application for exclusion of identification evidence at the new expanded pretrial hearing — must be affirmed pursuant to the Court's clear and unambiguous mandate. See Flanigan v. McFeely, 20 N.J. 414, 420 (1956) (courts have "a peremptory duty to obey" a higher court's mandate "precisely as it is written").

Although defendant suggests the incongruity of being given the benefit of a rule — crafted by the Court in the very appeal he pursued — that inevitably passes the reliability of identification evidence to the jury but denies him a new trial absent a favorable ruling at the plenary hearing, the Court's holding is unmistakable in that regard, and defendant recognizes

as much. Accordingly, if the trial judge properly refused to exclude the eyewitness identification evidence, defendant's conviction must be affirmed even though he was convicted on the basis of jury instructions that did not reflect the Court's new approach toward eyewitness identification evidence.

## III

In arguing the trial judge erroneously refused to exclude the eyewitness identification evidence in question, defendant presents three chief arguments. Defendant initially claims the new rule imposes on the State the burden of ultimately showing the evidence is reliable by "clear and convincing evidence." He then argues that the burden placed on defendant in the new framework is not adequately defined. And defendant lastly argues the trial judge did not "properly find and weigh" the effect of the various estimator variables discussed in the Supreme Court's opinion.

## A

Defendant urges the imposition of a burden on the State to demonstrate the reliability of an eyewitness identification in the pretrial screening process by "clear and convincing evidence," but that is simply not what the Supreme Court

mandated.  Instead, the Court described the new framework in the following way:

> First, to obtain a pretrial hearing, <u>a defendant has the initial burden of showing some evidence of suggestiveness</u> that could lead to a mistaken identification.  That evidence, in general, must be tied to a system — and not an estimator — variable.
>
> Second, <u>the State must then offer proof to show that the proffered eyewitness identification is reliable</u> — accounting for system and estimator variables — subject to the following:  the court can end the hearing at any time if it finds from the testimony that defendant's threshold allegation of suggestiveness is groundless. . . .
>
> Third, <u>the ultimate burden remains on the defendant to prove a very substantial likelihood of irreparable misidentification</u>. To do so, a defendant can cross-examine eyewitnesses and police officials and present witnesses and other relevant evidence linked to system and estimator variables.
>
> Fourth, if after weighing the evidence presented a court finds from the totality of the circumstances <u>that defendant has demonstrated a very substantial likelihood of irreparable misidentification</u>, the court should suppress the identification evidence. If the evidence is admitted, the court should provide appropriate, tailored jury instructions. . . .
>
> [<u>Id.</u> at 288-89 (emphasis added; citations omitted).]

In short, defendant must first show "some evidence" of suggestiveness to obtain a plenary hearing, following which the

State must "offer proof" of reliability while the "ultimate burden remains" <u>on defendant</u> to "prove a very substantial likelihood of irreparable misidentification." <u>Ibid.</u> It is not possible to rationally conclude that the Court intended to saddle the State with the burden of proving reliability by "clear and convincing evidence," a phrase which once was recognized to be part of the former pretrial screening test, <u>see</u> <u>Madison</u>, <u>supra</u>, 109 <u>N.J.</u> at 245,[12] but nowhere appears in the Court's cogent and unambiguous description of the new framework.

The only burden placed on the State would appear to be that referred to in the second part of the new framework: the State must "offer proof to show that the proffered eyewitness identification is reliable." <u>Henderson</u>, <u>supra</u>, 208 <u>N.J.</u> at 289. We would equate this burden to "offer proof" with the "burden of producing evidence" described in <u>N.J.R.E.</u> 101(b)(2), which is sometimes referred to as the "burden of going forward." The burden of producing evidence has been described by the Court "as so light as to be little more than a formality." <u>State v.</u> <u>Segars</u>, 172 <u>N.J.</u> 481, 494 (2002) (internal quotations and

---

[12]Defendant also urges, as analogous, the "clear and convincing" burden imposed on the State with regard to the pretrial screening of statements by tender-years declarants, <u>State v.</u> <u>Michaels</u>, 136 <u>N.J.</u> 299, 309 (1994), and the pretrial screening of evidence offered pursuant to the theory of inevitable discovery, <u>State v. Sugar</u>, 100 <u>N.J.</u> 214, 238-40 (1985).

citations omitted).  Such a burden is met "whether or not the evidence produced is found to be persuasive."  Ibid.  All that is necessary to sustain this burden is that the party so saddled provide evidence on the issue that is germane to the inquiry with sufficient clarity so that the opposing party has a full and fair opportunity to respond.  Cf., Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment on N.J.R.E. 101(b)(2) (2013).  The party upon whom this burden is placed cannot remain silent and still prevail.  Segars, supra, 172 N.J. at 495.  We assume this is the burden the Court imposed on the State in the second part of the new framework.  Of course, nothing has altered the State's burden of proving at trial the identity of the accused as the person who committed the charged offense beyond a reasonable doubt.

We reject defendant's forceful contention that the burden of persuasion rests on the State; the Court very clearly held that burden "remains" with defendant.  Henderson, supra, 208 N.J. at 289.

B

Defendant also expresses uncertainty about the degree to which defendant is required to persuade a trial court at a Wade hearing.

18                                                    A-5482-11T3

For purposes of an application to exclude eyewitness identification evidence based on state constitutional grounds, it is what the Court said it is: a defendant must prove "a very substantial likelihood of irreparable misidentification." 208 N.J. at 289. This phrase was not newly crafted. It was uttered in this context by the Supreme Court of the United States more than forty years ago when defining the application of the due process clause to eyewitness identification evidence. See, e.g., Simmons v. United States, 390 U.S. 377, 384-85, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247, 1253-54 (1968).

It is conceivable our Supreme Court viewed the process as similar to that routinely undertaken by trial judges in applying N.J.R.E. 403 in determining whether relevant evidence should be excluded because "its probative value is substantially outweighed" by the risks delineated in that evidence rule. In similar language, Manson described the federal process for excluding eyewitness identification evidence as requiring a determination of whether a witness's ability to make an accurate identification is "outweighed by the corrupting effect" of law enforcement suggestion. 432 U.S. at 114-16, 97 S. Ct. at 2254, 53 L. Ed. 2d at 155; see also Perry, supra, __ U.S. at __, 132 S. Ct. at 725, 181 L. Ed. 2d at 707-08.

In any event, it is not our place to describe this burden in other terms, such as by "a preponderance of the evidence" or by "clear and convincing evidence," since the Supreme Court chose not to describe the burden beyond the language contained in its opinion.

C

Our Supreme Court's decision to alter both the framework for pretrial screening eyewitness identification evidence and the manner in which juries are to be instructed to consider such evidence was based on its recognition that research has revealed that human memory is "complex," Henderson, supra, 208 N.J. at 245, "malleable," id. at 247, and subject to "an array of variables [which] can affect and dilute memory and lead to misidentifications," ibid. Scientific studies, upon which the Henderson Court relied, "divide[] those variables into two categories: system and estimator variables." Ibid. The former are those within the control of the criminal justice system, such as police identification procedures. Ibid. The latter are "related to the witness, the perpetrator, or the event itself — like distance, lighting, or stress — over which the legal system has no control." Ibid.

Defendant argues that the trial judge did not properly find and weigh various estimator variables, including those relating

20                                                                    A-5482-11T3

to the duration of the encounter, the involvement of a weapon, stress, distance and lighting, intoxication, and memory decay. We reject this argument because Judge Natal's comprehensive written decision reveals that he thoroughly considered and weighed these factors. The judge found that: Womble had an opportunity to observe defendant for "several minutes," later found to be five minutes, despite the fact that a gun was pointed at him; the event "was most likely highly stressful"; and Womble was within two feet of defendant during the encounter in an area sufficiently lit by a lamp in the hallway. In addition, the judge found an absence of evidence "to show what effect [the use of] crack cocaine and alcohol would have had" on Womble "to prevent him from accurately observing" defendant. In fact, the judge determined that, at the time of the shooting, Womble was "regularly using drugs and that when he used drugs" he was able to "do anything, including driving and going to work." The judge also found that, on the night of the shooting, Womble was playing chess with Harper when the intrusion occurred, thus suggesting his faculties were not unduly impaired. In addition, the judge found that, two weeks after the shooting, Womble was also able to show police the location of a shell casing he had tossed away on the night of the shooting, further demonstrating his ability to retrieve his

A-5482-11T3

memories of the evening two weeks earlier.[13]  And, in further considering memory decay, the judge determined that Womble selected defendant's photograph from an array two weeks after the shooting — what the judge described as "a relatively short span between the incident and the identification."

These findings are adequately supported by the evidence adduced at the hearing and, therefore, command our deference, State v. Robinson, 200 N.J. 1, 15 (2009), as does the judge's ultimate conclusion — based upon his sifting through and weighing the multitude of facts and circumstances — that defendant failed to demonstrate a very substantial likelihood of misidentification.  An appellate court must refrain from second guessing a judge's factual conclusion when all that is before the court is what is contained in a static record.  We find no reason to disturb the experienced trial judge's findings and conclusions.

We, thus, affirm the order denying suppression and the judgment of conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[13]As noted in our earlier opinion, Womble had told police that on the night of the shooting he had "retrieved from the [apartment] floor a shell casing, which he later threw into the street." 397 N.J. Super. at 405.