**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4803-18T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

GUILLERMO BORGES,

    Defendant-Respondent.

_____

Argued telephonically May 6, 2020 –
Decided June 23, 2020

Before Judges Fuentes, Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-11-3128.

Lucille M. Rosano, Special Deputy Attorney General/Acting Assistant County Prosecutor, argued the cause for appellant (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Lucille M. Rosano, of counsel and on the briefs).

Susan Lee Romeo, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Susan Lee Romeo, of counsel and on the brief).

PER CURIAM

The State appeals from: (1) a June 18, 2019 order suppressing an out-of-court identification of defendant Guillermo Borges based on an audio-recorded photo array; and (2) a July 1, 2019 order dismissing the indictment against defendant. We vacate and reverse both orders and remand the matter for trial.

Following a shooting that occurred in Newark on June 21, 2016, defendant was indicted for first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a).

The facts are taken from an audio recorded statement by the victim of the shooting and testimony during a pretrial evidentiary hearing. On the day of the incident, the victim argued and got into a fist fight with a man he knew by the street name Cuba. As the victim walked away, Cuba pulled out a gun and shot the victim in the stomach.

Immediately after the shooting, the victim was taken to the University of Medicine and Dentistry of New Jersey Hospital in Newark where he underwent surgery for a gunshot wound to the abdomen. Post-surgery, the victim received pain medication and had intravenous lines in his hands.

Based on information obtained from the victim, the victim's brother, and a local police officer familiar with the man called Cuba, Detective Anthony Maldonado of the Newark Police Department assembled a photo array of six individuals who matched the shooter's description. Defendant's photograph was included in the array.

On the evening of June 22, 2016, while the victim recovered from surgery, Detectives Maldonado and Pablo Gonzalez spoke to the victim at the hospital. Pursuant to Rule 3:11, the meeting was audio recorded. The victim told Detective Maldonado that he was shot in the stomach by a man named Cuba. On the recording, the victim was able to spell his own name. He also provided his date of birth, address, and social security number. The victim graduated from high school, but he explained he suffered from dyslexia, causing difficulty reading. He also stated he was not pressured into giving a statement to the detectives.

After obtaining preliminary information from the victim, Detective Maldonado left the room. Detective Gonzalez, a blind administrator[1] who had no role in assembling the photo array, showed six photographs to the victim.

---

[1] A "blind administrator" is a term of art used in criminology studies to identify the variables that influence the reliability of eyewitness identifications. The variable "Blind Administration" in lineup identification procedures is discussed in State v. Henderson, 208 N.J. 208, 248-250 (2011).

Detective Gonzalez read the Photo Display Instructions because there were "all kind[s] of things" in the victim's hands. The detective explained there were a series of photographs and the victim should take "as much time to look at each of them." He further instructed that "[t]he person who committed the crime may or may not be in this group. And the mere display of the photographs do[es] not mean or suggest that the police believe that the person who committed this crime is in these photographs." In addition, the detective instructed that if the victim selected a photo, "do not ask me if I agree . . . ." After reading the instructions, Detective Gonzalez asked the victim to sign the form as best he could.

The victim identified photograph number three, defendant's photograph, as his assailant. Detective Gonzalez then read the Photograph Identification Form to the victim. The victim could only write the words "black male" on the form due to the intravenous lines in his writing hand. After confirming the victim selected photograph number three as the person who shot him, Detective Gonzalez completed the remaining information on the form as conveyed to him by the victim, asked the victim to initial the form, and witnessed the victim's initials. The victim also placed his initials on the reverse side of photograph number three and marked an "X" on the other photographs, indicating those photographs did not depict the person who shot him.

After completing the Photograph Identification Form, Detective Gonzalez left the hospital room and Detective Maldonado reentered. Maldonado confirmed the victim's selection of photograph number three as the shooter. Only after the victim identified the shooter's photograph did Detective Maldonado state defendant's name and SBI number for the audio recording. Aware that the victim was in pain and receiving medication, Detective Maldonado reviewed the Photograph Identification Form with the victim. The victim confirmed no one threatened, urged, or prompted him to make a selection from the photo array and the information contained in the form was truthful to the best of his knowledge.

Prior to trial, defendant moved to suppress the victim's out-of-court identification and the trial judge conducted an evidentiary hearing. Detective Maldonado was the only person who testified at the Wade[2] hearing.[3] In an April 29, 2019 order, the judge denied the motion to suppress the out-of-court

---

[2] U.S. v. Wade, 388 U.S. 218 (1967).

[3] The judge denied defense counsel's request to have the victim testify at the hearing, concluding the victim's testimony was unnecessary to decide the application.

identification, determining there was no suggestiveness in the photo array and the identification procedure was reliable.[4]

Defendant sought reconsideration of the suppression motion and denial of his request to have the victim testify at the Wade hearing. In an April 29, 2019 order, the judge denied reconsideration, explaining the identification was audio recorded, the victim and defendant were not strangers, and the victim selected defendant's photograph from the array as the man who shot him.

While jury selection was ongoing, the victim appeared in court and told defense counsel he was not shot by defendant. The State then moved to admit the victim's prior statement pursuant to N.J.R.E. 803(a)(1)(A). On June 4, 2019, the judge conducted a Gross[5] hearing to determine the reliability of the victim's recorded statement.

During the Gross hearing, the victim recalled being hospitalized because he had been shot in the chest. Contrary to his audio recorded statement, the victim testified he was at a bar in Irvington, and not in Newark, the day he was shot. The victim also said he did not see the shooter.

---

[4]  The judge indicated she would issue a statement of reasons. However, no statement of reasons was included in the record on appeal.

[5]  State v. Gross, 121 N.J. 1, 17 (1990).

During the hearing, the victim initially testified he did not recall speaking to the police at the hospital. However, after listening to the audio recording, the victim recalled speaking with Detective Maldonado and acknowledged his own voice on the recording. He did not recall the questions asked by the detectives or his responses, did not remember selecting defendant's photograph, and believed he may have selected more than one photograph because he "was out of it" at the time.

The victim testified he "was hurting, bad" when the detectives came to the hospital and he "didn't know what [he] was talking about at all." He sought to retract his statement because he did not "want an innocent man in jail . . . who didn't hurt me." He denied being threatened, forced, or tricked into recanting. During the hearing, the victim testified he did not remember much about being shot or giving a statement to the police.

Based on the victim's testimony during the Gross hearing, defense counsel asked the judge to reconsider the motion to suppress the out-of-court identification. The judge granted the motion, reopened the Wade hearing, and listened to additional testimony from the victim. In deciding to reopen the Wade hearing, the judge explained that the victim's testimony about selecting more than one photograph from the array raised "a question of suggestibility."

The victim's testimony during the reopened Wade hearing was substantially similar to his testimony during the Gross hearing. The victim was unable to remember the shooting or being questioned by the detectives at the hospital. He did not recall looking at photographs. However, the victim acknowledged his initials were on the reverse side of defendant's photograph and on the bottom of the Photograph Identification Form. During the reopened Wade hearing, the victim testified he could not "remember any of this stuff," including whether he selected more than one photograph from the array.

Detective Maldonado testified during the reopened Wade hearing. According to the detective, the victim appeared "relaxed but in pain. Calm, I mean, he was just hurting." Detective Maldonado testified the victim did not have trouble understanding the questions, did not appear reluctant to answer questions during the hospital interview, and did not refuse to proceed at any time during the questioning. The detective said nothing was promised to the victim in exchange for his statement and the victim was not pressured or coerced into providing the statement.

Based on the Gross hearing testimony, the judge ruled the victim's prior statements to the police were reliable and could be used at trial for impeachment purposes as a prior inconsistent statement under N.J.R.E. 803(a)(1) and as substantive evidence as a recorded recollection under N.J.R.E. 803(c)(5).

Applying the Gross factors, the judge found the victim's statements were reliable, holding:

> The circumstances under which the statement was taken . . . are factors that can be considered by the trial jury in assessing the weight to be given to the statement, not its admissibility. The statement could be proffered as substantive evidence under the recorded recollection exception to the hearsay rule, the statement could be considered, for impeachment purposes, as a prior inconsistent statement.

Despite finding the victim's statement reliable under Gross, the judge reversed her earlier Wade ruling and granted defendant's motion to suppress the victim's out-of-court identification. The judge based her ruling, in part, on the detectives' failure to comply with Rule 3:11(c)(7) by recording the victim's level of confidence, in his own words, regarding the identification of defendant. In addition, the judge suppressed the out-of-court identification based on the victim's physical and mental condition at the time of his statement.

As a result of the judge's suppression of the victim's out-of-court identification, defense counsel moved to dismiss the indictment. The judge granted the motion, concluding the victim's recanting of the identification negated defendant's guilt. She stated, "you cannot patently ignore that which would be considered exculpatory if it was a basis for a motion for a new trial after the fact."

"Our standard of review on a motion to bar an out-of-court identification . . . is no different from our review of a trial court's findings in any non-jury case." State v. Wright, 444 N.J. Super. 347, 356 (App. Div. 2016). We will uphold the trial court's factual findings in a motion to suppress provided the findings are "supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243-44 (2007).

Rule 3:11 governs admission of an eyewitness out-of-court identification. In accordance with this Rule, identifications by law enforcement officers are required to be recorded and preserved. The contents of the recordation should "include details of what occurred at the out-of-court identification," including identification of the place where the recording was made; the dialogue between the witness and the officer administering the procedure; the results of the identification procedure; the photographic array used; the identity of the person who witnesses the photo lineup; and a statement of confidence in the witness's own words after making an identification. See R. 3:11(c).

In a motion to suppress an out-of-court identification, a defendant is required to make a threshold showing of "some evidence of suggestiveness that could lead to a mistaken identification." Henderson, 208 N.J. at 288. A defendant bears the burden of proving a very substantial likelihood of irreparable misidentification. State v. Henderson, 433 N.J. Super. 94, 107 (App.

Div. 2013). A trial court may hold a hearing to determine whether the out-of-court identification was made pursuant to unduly suggestive circumstances or whether the pretrial identification was reliably conducted and therefore admissible. Henderson, 208 N.J. at 238-39, 293-96.

In Henderson, our Supreme Court divided out-of-court identification characteristics into two groups: system variables and estimator variables. Id. at 248-61, 261-72. System variables are factors over which the State has control, such as how the array was constructed, the pre-identification instructions given, and the recording of a victim's confidence level in the identification before any confirmatory feedback. Id. at 248-61. Estimator variables are factors over which the legal system has no control, such as stress, duration of the witness's observation of the suspect, distance and lighting, and similar factors that could impact the accuracy of the identification. Id. at 261-72. If a defendant fails to show some evidence of suggestiveness tied to a system variable, there is no need to consider estimator variables because evidence of reliability is a fact issue for the jury. Id. at 291.

Here, defense counsel argued a substantial likelihood of misidentification based solely on Detective Gonzalez's failure to elicit a statement of confidence from the victim in accordance with Rule 3:11(c)(7). Nothing in Henderson or Rule 3:11(c)(7) requires a statement of confidence to be expressed in percentage

form.  Moreover, the absence of an expression of confidence in the witness's own words is one component of the identification process under Rule 3:11.  The lack of an expression of confidence, either in percentage form or by the witness's own words, by itself does not constitute evidence of suggestiveness.  Henderson, 208 N.J. at 289-90.  See also State v. Green, 239 N.J. 88, 109 (2019) (holding no per se rule excluding evidence any time a full record of identification is not preserved); State v. Anthony, 237 N.J. 213, 239 (2019) (rejecting the argument that identification should be barred for all purposes if the police fail to abide by Rule 3:11 because it "would amount to a per se rule that any error in recording an identification, even a technical or insignificant one that presents a low risk of misidentification, requires suppression").

Here, the audio recording substantially comported with the requirements of Rule 3:11.  The judge originally denied the motion to suppress because she found no suggestiveness in the photo array presented to the victim and the identification procedure employed by the detectives was reliable.  In denying reconsideration of her original suppression motion ruling, the judge further explained the identification was audio recorded, the victim and defendant knew each other, and the victim selected defendant's photograph as the man who shot him.

Nothing regarding the procedure by which the victim identified defendant changed between the time of the judge's original ruling and her subsequent reversal of that ruling. The audio recording supported the judge's initial denial of defendant's motion to suppress the out-of-court identification. The recording indicated no confirmatory feedback was given to the victim prior to his identification of defendant. The audio captured the dialogue between the detectives and the victim and there was nothing suggestive in those conversations. Based on the audio recording, the victim selected photograph number three, defendant's photo, without prompting by the detectives. When asked to confirm if the photograph selected depicted the individual who shot him, the victim did not hesitate in responding "[y]es."

Nor was the victim's mental and physical condition at the time of the statement evidence of suggestiveness to warrant suppression of the identification. The audio recording memorialized the detectives' observations of the victim's mental and physical state during the photo identification process. The detectives noted the victim's pain level as reflected in his occasional moaning or grunting during the statement and his limited ability to use his hands for writing and holding papers. The audio recording also revealed the victim was lucid, responsive, and cooperative while giving his statement. His answers to the detectives' questions were clear and unequivocal. The victim never

A-4803-18T1

wavered or hesitated in his identification of the shooter. Nothing in the audio recording reflected suggestiveness based on the victim's physical or mental condition leading to his selection of defendant's photograph from the array.

Further, the judge never explained why suppression of the out-of-court identification was warranted based on the failure to indicate the victim's confidence level, in his own words, regarding the identification of defendant as the shooter. If the judge believed the record as prepared by the detectives was "lacking in important details as to what occurred at the out-of-court identification," Rule 3:11(d) allowed her to "fashion an appropriate jury charge to be used in evaluating the reliability of the identification" rather than suppress the identification.

Based on our review of the record, the judge's initial decision to deny the motion to suppress the out-of-court identification was supported by substantial credible evidence. The judge originally determined the audio recorded out-of-court identification was not suggestive and therefore admissible. She found the police followed the requirements set forth in Rule 3:11 and case law governing out-of-court identifications. There was nothing in the audio recorded statement suggesting the victim was forced to choose defendant's photograph, place his initials on the reverse side of the selected photograph, or initial the forms regarding the identification procedure. To the contrary, on the audio recording,

the victim spoke clearly in responding to questions regarding his identification of the person who shot him. The victim also stated he spoke to the detectives of his own free will.

Having reviewed the totality of the circumstances regarding the identification procedure in this case, defendant failed to present some evidence of suggestiveness in the photo array that could lead to a mistaken identification to warrant suppression of the out-of-court statement. Without some evidence of suggestiveness, the judge abused her discretion in reopening the <u>Wade</u> hearing and granting defendant's motion to suppress. The judge mistakenly appropriated the role of the jury in reviewing the victim's testimony. Any discrepancies between the victim's testimony during the combined <u>Gross/Wade</u> hearing and his earlier statements to the detectives involve issues of credibility and the weight to be accorded to the out-of-court identification, not its admissibility.

The State next argues that the judge abused her discretion in dismissing the indictment based on her conclusion that the victim's recanting of the identification was exculpatory evidence negating defendant's guilt. In reviewing a motion to dismiss an indictment, we first "determine whether the trial court applied the correct standard." <u>State v. Paige</u>, 256 N.J. Super. 362, 369 (App. Div. 1992) (citing <u>State v. Abbati</u>, 99 N.J. 418, 436 (1985)). If the correct standard was applied in dismissing the indictment, "[t]he decision should be

reversed on appeal only when it clearly appears that the exercise of discretion was mistaken." Abbati, 99 N.J. at 436.

An "indictment should be disturbed only on the 'clearest and plainest ground,' . . . and only when the indictment is manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 228-29 (1996) (quoting State v. Perry, 124 N.J. 128, 168 (1991)). "The absence of any evidence to support the charges would render the indictment 'palpably defective' and subject to dismissal." State v. Morrison, 188 N.J. 2, 12 (2006) (citing Hogan, 144 N.J. at 228-29). "[T]he decision whether to dismiss an indictment lies within the discretion of the trial court, and that exercise of discretionary authority ordinarily will not be disturbed on appeal unless it has been clearly abused." Hogan, 144 N.J. at 229 (citing State v. McCrary, 97 N.J. 132, 144 (1984)).

The State argues the judge incorrectly applied the test in State v. Carter, 69 N.J. 420 (1976) in dismissing the indictment. However, the judge applied Carter to assess the recantation evidence, not to decide whether the indictment should be dismissed.

The judge incorrectly applied the test set forth in Hogan, 144 N.J. at 237-38, in deciding the motion to dismiss the indictment. A prosecutor's duty to present known exculpatory evidence to the grand jury "arises only if the evidence satisfies two requirements: it must directly negate guilt and must also

be clearly exculpatory." Id. at 237. "[T]he prosecutor need not construct a case for the accused or search for evidence that would exculpate the accused. Only when the prosecuting attorney has actual knowledge of clearly exculpatory evidence that directly negates guilt must such evidence be presented to the grand jury." Id. at 238 (emphasis added).

Defendant claimed the subsequent exculpatory evidence of the victim's eve of trial recanting of the out-of-court identification warranted dismissal of the indictment. However, dismissal of an indictment must be based on actual knowledge of exculpatory evidence known to a prosecutor at the time of the grand jury proceedings. Here, the grand jury indicted defendant on November 10, 2016, and the victim recanted his identification of defendant on or about May 15, 2019. The recanted testimony could not be "clearly exculpatory" to warrant dismissal of the indictment because the victim's testimony was not available at the time the matter was presented to the grand jury. See Hogan, 144 N.J. at 238. Therefore, the judge abused her discretion in dismissing the indictment because the prosecutor had no "actual knowledge of clearly exculpatory evidence" at the time the indictment was presented to the grand jury. Ibid.

Based on the testimony adduced during the Gross hearing, the judge found the victim's prior inconsistent statement to Detective Maldonado was reliable

A-4803-18T1

and admissible both for impeachment purposes and as substantive evidence. Consistent with that ruling, the judge should allow the jury to hear the victim's audio recorded statement. If the victim testifies and recants his audio recorded statement, the jury should assess the victim's credibility regarding the out-of-court identification as weighed against any recanting of that identification at the time of trial.

For these reasons, we vacate and reverse the June 18, 2019 order granting defendant's motion to suppress the victim's out-of-court identification and the July 1, 2019 order dismissing the indictment. We remand the matter to the trial judge and instruct the out-of-court identification and the victim's possible recantation of that identification at the time of trial be presented to a jury with appropriately tailored jury instructions.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION